[No. S147767. Aug. 25, 2008.]

CABLE CONNECTION, INC., et al., Plaintiffs and Appellants, v. DIRECTV, INC., Defendant and Respondent.

## COUNSEL

Beatie and Osborn and Daniel A. Osborn for Plaintiffs and Appellants.

Reed Smith, Margaret A. Grignon, Andrew E. Paris; Kirkland & Ellis, Michael E. Baumann and Becca Wahlquist for Defendant and Respondent.

Horvitz & Levy, Barry R. Levy, Jeremy B. Rosen and Alicia A. Pell for L.F.P., Inc., as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**CORRIGAN, J.**—This case presents two questions regarding arbitration agreements. (1) May the parties structure their agreement to allow for judicial review of legal error in the arbitration award? (2) Is classwide arbitration available under an agreement that is silent on the matter?

On the first question, the United States Supreme Court has held that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) does not permit the parties to expand the scope of review by agreement. (*Hall Street*

*Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576, ___–___ [170 L.Ed.2d 254, 128 S.Ct. 1396, 1404–1405] (*Hall Street*).) However, the high court went on to say that federal law does not preclude "more searching review based on authority outside the [federal] statute," including "state statutory or common law." (*Id.* at p. ___ [170 L.Ed.2d 254, 128 S.Ct. at p. 1406].) In *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*), this court reviewed the history of the California Arbitration Act (CAA; Code Civ. Proc., § 1280 et seq.).[1] We concluded that the California Legislature "adopt[ed] the position taken in case law . . . that is, 'that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.' " (*Moncharsh*, at p. 25, quoting *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 186 [260 P.2d 156] (*Crofoot*).)

We adhere to our holding in *Moncharsh*, recognizing that contractual limitations may alter the usual scope of review. The California rule is that the parties may obtain judicial review of the merits by express agreement. There is a statutory as well as a contractual basis for this rule; one of the grounds for review of an arbitration award is that "[t]he arbitrators exceeded their powers." (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).) Here, the parties agreed that "[t]he arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error." This contract provision is enforceable under state law, and we reverse the contrary ruling of the Court of Appeal.

Regarding the classwide arbitration issue, we remand for redetermination by the arbitrators. The contract directs the arbitrators to apply California substantive law, but specifies that the arbitration proceedings are to be governed by federal law and the rules of the American Arbitration Association (AAA).[2] The arbitration panel, in a split decision, decided that classwide arbitration is a substantive right under California case law, and that AAA rules allow classwide arbitration unless the arbitration clause forbids it. We conclude that the majority arbitrators misapplied both California law and AAA rules, and that it is proper to return the matter to them for reconsideration under the proper legal standards.

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The contract allows enforcement proceedings to be brought in either state or federal court. Because the parties proceeded in state court under the CAA, we conclude that judicial review of the award is governed by state law, though the arbitration proceedings are governed by federal procedural law and AAA rules under the terms of the contract. (See fn. 12, *post.*)

## I. BACKGROUND

Defendant DIRECTV, Inc., broadcasts television programming nationwide, via satellite. It contracts with retail dealers to provide customers with equipment needed to receive its satellite signal. In 1996, DIRECTV employed a "residential dealer agreement" for this purpose. A new "sales agency agreement" was used in 1998. Both agreements included arbitration clauses; neither mentioned classwide arbitration.

In 2001, dealers from four states filed suit in Oklahoma, asserting on behalf of a nationwide class that DIRECTV had wrongfully withheld commissions and assessed improper charges. DIRECTV moved to compel arbitration. As the Oklahoma court was considering whether the arbitration could be conducted on a classwide basis, the United States Supreme Court decided *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Bazzle*). A plurality in *Bazzle* held that the arbitrator must decide whether class arbitration is authorized by the parties' contract. (*Id.* at pp. 451–452 (plur. opn. of Breyer, J.); see *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 169–171 [30 Cal.Rptr.3d 76, 113 P.3d 1100].) Accordingly, the Oklahoma court directed the parties to submit the matter to arbitration in Los Angeles as provided in the sales agency agreement.[3]

After the dealers presented a statement of claim and demand for class arbitration in March 2004, a panel of three AAA arbitrators was selected. Following the procedure adopted by the AAA in response to *Bazzle*, the panel

---

[3] The sales agency agreement, unlike the earlier residential dealer agreement, specified that claims of $250,000 or more would be heard by three arbitrators. The arbitrators, the trial court, and the Court of Appeal applied the arbitration clause in the sales agency agreement. The parties do not question the use of that clause.

Section 18.12 of the sales agency agreement, captioned "ARBITRATION," states:

"(a) Any dispute or claim arising out of the interpretation, performance, or breach of this Agreement, including without limitation claims alleging fraud in the inducement, shall be resolved only by binding arbitration, at the request of either party, in accordance with the rules of the American Arbitration Association, modified as herein provided. The arbitrators shall be, to the fullest extent available, either retired judges or selected from a panel of persons trained and expert in the subject area of the asserted claims. If the claim seeks damages of less than $250,000, it shall be decided by one arbitrator. In all other cases, each party shall select one arbitrator, who shall jointly select the third arbitrator. If for any reason a third arbitrator is not selected within one month after the claim is first made, the third arbitrator shall be selected in accordance with the rules of the American Arbitration Association. The arbitrators shall apply California substantive law to the proceeding, except to the extent Federal substantive law would apply to any claim. The arbitration shall be conducted in Los Angeles, California. An award may be entered against a party who fails to appear at a duly noticed hearing. The arbitrators shall prepare in writing and provide to the parties an award including factual findings and the reasons on which their decision is based. The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected

first addressed whether the parties' agreement permitted the arbitration to proceed on a classwide basis.

After briefing and argument, a majority of the panel decided that even though "the contract is silent and manifests no intent on this issue," arbitration on a classwide basis was authorized under *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42 [78 Cal.Rptr.2d 779] (*Blue Cross*), and *Keating v. Superior Court* (1982) 31 Cal.3d 584 [183 Cal.Rptr. 360, 645 P.2d 1192] (*Keating*), overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1, 11 [79 L.Ed.2d 1, 104 S.Ct. 852]. The majority deemed the question one of substantive California law, though it also relied on AAA rules and policy governing class arbitration. The award emphasized that class arbitration was not necessarily required in this case; it was merely permitted by the contract. Whether the arbitration would actually be maintained on a classwide basis would be the subject of a future hearing.

The dissenting arbitrator found that the sales agency agreement provided "ample indication" the parties had contemplated arbitration only on an individual basis. He reasoned that *Blue Cross* and *Keating* did not apply because they addressed the discretion of a court to permit classwide arbitration, based not on contractual intent but on policy considerations reflected in the CAA. Under *Bazzle*, on the other hand, this determination is for arbitrators to make based on the terms of the contract. The dissent considered the availability of classwide arbitration to be a procedural issue subject to the FAA and AAA rules, under the terms of the arbitration clause.

DIRECTV petitioned to vacate the award, contending (1) the majority had exceeded its authority by substituting its discretion for the parties' intent regarding class arbitration; (2) the majority had improperly ignored extrinsic evidence of contractual intent; and (3) even if the majority had not exceeded the authority generally granted to arbitrators, the award reflected errors of law that the arbitration clause placed beyond their powers and made subject to judicial review. The dealers responded that the majority had properly applied

on appeal to a court of competent jurisdiction for any such error. The decision of the arbitrators may be entered and enforced as a final judgment in any court of competent jurisdiction. The parties shall share equally the arbitrator's fees and other costs of the arbitration.

"(b) Notwithstanding the foregoing, the following shall not be subject to arbitration and may be adjudicated only by the Los Angeles County, California Superior Court or the U.S. District Court for the Central District of California:

"(1) any dispute, controversy, or claim relating to or contesting the validity of DIRECTV's right to offer DBS Service to the public or any of DIRECTV's Trade Secrets or Marks; and

"(2) the request by either party for preliminary or permanent injunctive relief, whether prohibitive or mandatory, or provisional relief such as writs of attachment or possession.

"(c) This Section and any arbitration conducted hereunder shall be governed by the United States Arbitration Act (9 U.S.C. Section 1, et seq.). The parties acknowledge that the transactions contemplated by this Agreement involve commerce, as defined in said Act. This Section 18.12 shall survive the termination or expiration of this Agreement."

California law and had not refused to receive extrinsic evidence. The trial court vacated the award, essentially accepting all of DIRECTV's arguments.

The Court of Appeal reversed, holding that the trial court exceeded its jurisdiction by reviewing the merits of the arbitrators' decision. Although in the trial court the dealers did not question whether a contract may provide for an expanded scope of judicial review, the Court of Appeal deemed it an important matter of public policy, suitable for consideration for the first time on appeal. The court agreed with two previous Court of Appeal decisions holding such provisions unenforceable. (*Oakland-Alameda County Coliseum Authority v. CC Partners* (2002) 101 Cal.App.4th 635, 645 [124 Cal.Rptr.2d 363]; *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730, 735–737 [115 Cal.Rptr.2d 810] (*Crowell*).) It concluded that the provision for judicial review in this case was severable from the remainder of the arbitration agreement, and directed the trial court to confirm the award.

We granted DIRECTV's petition for review.

## II. DISCUSSION

### A. *Contract Provisions for Judicial Review of Arbitration Awards*

#### 1. *The CAA, the FAA, and Prior Case Law*

"In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]; the similarity is not surprising, as the two share origins in the earlier statutes of New York and New Jersey. (See Recommendation and Study relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-28 . . . ; Feldman, *Arbitration Law in California: Private Tribunals for Private Government* (1957) 30 So.Cal.L.Rev. 375, 388, fn. 45.)" (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 406 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*).) The CAA, like the FAA, provides that arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (§ 1281; see 9 U.S.C. § 2.) This provision was intended "to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law." (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626, fn. 14 [87 L.Ed.2d 444, 105 S.Ct. 3346]; see also, e.g., *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 226 [96 L.Ed.2d 185, 107 S.Ct. 2332]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98 [99 Cal.Rptr.2d 745, 6 P.3d 669]; *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1073–1074 [90 Cal.Rptr.2d 334, 988 P.2d 67].)

Consistent with that purpose, the CAA and the FAA provide only limited grounds for judicial review of an arbitration award. Under both statutes, courts are authorized to vacate an award if it was (1) procured by corruption, fraud, or undue means; (2) issued by corrupt arbitrators; (3) affected by prejudicial misconduct on the part of the arbitrators; or (4) in excess of the arbitrators' powers. (§ 1286.2, subd. (a)[4]; 9 U.S.C. § 10(a).[5]) An award may be corrected for (1) evident miscalculation or mistake; (2) excess of the arbitrators' powers; or (3) imperfection in form. (§ 1286.6[6]; 9 U.S.C. § 11.[7])

---

[4] "[T]he court shall vacate the award if the court determines any of the following:

"(1) The award was procured by corruption, fraud or other undue means.

"(2) There was corruption in any of the arbitrators.

"(3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.

"(4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.

"(5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.

"(6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives." (§ 1286.2, subd. (a).)

[5] "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(1) where the award was procured by corruption, fraud, or undue means;

"(2) where there was evident partiality or corruption in the arbitrators, or either of them;

"(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

"(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." (9 U.S.C. § 10(a).)

[6] "[T]he court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that:

"(a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or

"(c) The award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6.)

[7] "In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

As noted at the outset, and discussed further below, in *Moncharsh* we declared that " 'in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.' (*Crofoot, supra*, 119 Cal.App.2d at p. 186.)" (*Moncharsh, supra*, 3 Cal.4th at p. 25.) In the years following the *Moncharsh* decision, our Courts of Appeal have rejected claims that review of the merits was authorized inferentially, by contract clauses stating that " '[t]he award will be in the form of a statement of decision' " (*Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576, 585 [19 Cal.Rptr.2d 295]), or that California law " 'shall govern [the] interpretation and effect' " of the contract (*Marsch v. Williams* (1994) 23 Cal.App.4th 238, 245 [28 Cal.Rptr.2d 402]), or that the arbitrator " 'shall apply California law' " and " 'shall be constrained by the rule of law' " (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 297 [47 Cal.Rptr.3d 763] (*Baize*)). In each of these cases, however, the courts noted that an expanded scope of review *would* be available under a clause specifically tailored for that purpose. (*Baize*, at p. 301; *Marsch*, at pp. 244–245; *Pacific Gas & Electric Co.*, at p. 588.)

Nevertheless, when the issue has been squarely presented, no Court of Appeal has enforced a contract clause calling for judicial review of an arbitration award on its merits.[8] In *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 45 Cal.App.4th 631 [53 Cal.Rptr.2d 50] (*Old Republic*), a stipulation for binding arbitration provided that a special master would enter findings of fact and conclusions of law, which would be reviewed by the trial court under the CAA, entered as a judgment, and " 'treated as a judgment of the Superior Court for all purposes, including, without limitation, the right of any party adversely affected by said judgment

---

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." (9 U.S.C. § 11.)

[8] Two divided Courts of Appeal have treated arbitration proceedings as other forms of alternative dispute resolution, so as to permit review of the merits. In *National Union Fire Ins. Co. v. Nationwide Ins. Co.* (1999) 69 Cal.App.4th 709, 714 [82 Cal.Rptr.2d 16] (*National Union*), a stipulation for arbitration was deemed " 'a reference by consent of the parties' " under section 638. In *City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 10–13 [88 Cal.Rptr.2d 863], the court construed an agreement for binding arbitration before a retired judge as a stipulation for trial before a temporary judge under article VI, section 21 of the California Constitution.

to seek review of the findings of fact, conclusions of law, or judgment as if this matter had been tried to the Court without a jury and judgment entered thereon.' " (45 Cal.App.4th at pp. 634–635.) The Court of Appeal refused to review the merits, because the stipulation was "inconsistent with some of the primary purposes of arbitration, quicker results and early finality." (*Id.* at p. 638.) Moreover, "the flexibility in the consideration of both evidence and law afforded to arbitrators" made plenary review on appeal problematic. (*Ibid.*) The court also held that the limitations on the scope of the trial court's review precluded more extensive appellate review, and that the parties could not create appellate jurisdiction by consent. (*Id.* at pp. 638–639.)

In *Crowell, supra*, 95 Cal.App.4th 730, the parties' contract included an arbitration clause requiring the arbitrator to make written findings and conclusions " 'supported by law and substantial evidence.' " (*Id.* at p. 733, fn. 2.) The award was to be " 'final, binding and enforceable . . . , except that upon the petition of any party to the arbitration, a court shall have the authority to review the transcript of the arbitration proceedings and the arbitrator's award and shall have the authority to vacate the arbitrator's award, in whole or in part, on the basis that the award is not supported by substantial evidence or is based upon an error of law.' " (*Ibid.*)

The *Crowell* court, in a split decision, decided that the statutory bases for vacating and correcting arbitration awards are exclusive, and that permitting the parties to expand those grounds by agreement would undermine the purpose of reducing expense and delay. (*Crowell, supra*, 95 Cal.App.4th at p. 735.) Noting that section 1296 authorizes review of the merits following a public contract arbitration, the majority reasoned that the absence of such a provision for other forms of arbitration "suggests the legislative intent that parties cannot agree to a review on the merits." (*Crowell*, at pp. 737–738.) "Because the Legislature clearly set forth the trial court's jurisdiction to review arbitration awards when it specified grounds for vacating or correcting awards in sections 1286.2 and 1286.6, we hold that the parties cannot expand that jurisdiction by contract to include a review on the merits." (*Crowell*, at p. 739.) The majority deemed the provision for judicial review "so central to the arbitration agreement that it could not be severed," and thus held the entire agreement unenforceable. (*Id.* at pp. 739–740.)

A lengthy dissent in *Crowell* argued that the arbitration statutes do not prohibit judicial review of the merits. The dissenting justice saw section 1296 as a demonstration of the courts' suitability to provide substantive review of arbitration awards, and noted that *Moncharsh* only bars such review in the absence of a limiting clause in the arbitration agreement. (*Crowell, supra*, 95 Cal.App.4th at pp. 743–745 (dis. opn. of Nott, J.).) The dissent took the position that courts have fundamental jurisdiction to review arbitration

awards, and parties may consent to a scope of review broader than that provided by the CAA. It also contended that the policies favoring arbitration would be best served by honoring the parties' freedom to contract for the resolution of disputes under rules of their own choosing. The most costly and time-consuming aspects of litigation could be handled by an arbitrator, with the courts merely providing an oversight function. Parties who fear that the benefits of speed and reduced expense may be obtained at the expense of a capricious arbitration award would be encouraged to select arbitration, with the assurance provided by judicial review. (95 Cal.App.4th at pp. 748–753.) Here, the dissent said, the majority had "throw[n] 'the baby out with the bathwater' " by forcing parties who had agreed to arbitration to go through "full court litigation." (*Id.* at p. 753.)

The *Crowell* dissent has found support in dicta. One Court of Appeal has deemed it "strong," and criticized the majority opinion as inconsistent with *Moncharsh.* (*Baize, supra,* 142 Cal.App.4th at p. 301, fn. 5.) However, the views of the *Crowell* majority were followed in *Oakland-Alameda County Coliseum Authority v. CC Partners, supra,* 101 Cal.App.4th 635. There the arbitration agreement included the following provision: " '[E]ither party may file an application to correct or vacate the arbitration award or an application for de novo review on all questions of law based on the arbitrator's finding[s] of fact (which are deemed for such purpose to be stipulated by the parties), in either case under California Code of Civil Procedure Section 1285 *et seq.* . . .' " (*CC Partners,* at p. 645, fn. 3.) The Court of Appeal agreed with the "primary holding in *Crowell,*" that the scope of review could not be expanded by contract. (*Id.* at p. 645.) But rather than invalidating the entire arbitration agreement, the court severed the provision for judicial review and affirmed the judgment confirming the award. Unlike the agreement in *Crowell,* the *CC Partners* contract included a severance clause. (*CC Partners,* at pp. 646–647.)

Before the *Hall Street* decision was handed down, the federal circuits were split on whether the FAA grounds for judicial review are exclusive. The First, Third, Fourth, Fifth, and Sixth Circuits held or indicated that contract provisions for expanded review of arbitration awards were enforceable.[9] The

---

[9] *Puerto Rico Telephone v. U.S. Phone Mfg.* (1st Cir. 2005) 427 F.3d 21, 30–31 (dicta; see also *New England Utilities v. Hydro-Quebec* (D.Mass. 1998) 10 F.Supp.2d 53, 62–64); *Roadway Package System, Inc. v. Kayser* (3d Cir. 2001) 257 F.3d 287, 293 (dicta); *Syncor Intern. Corp. v. McLeland* (4th Cir. 1997) 120 F.3d 262; *Gateway Technologies v. MCI Telecommunications* (5th Cir. 1995) 64 F.3d 993, 996–997; *Jacada Ltd. v. Intern. Marketing Strategies* (6th Cir. 2005) 401 F.3d 701, 710–712 (dicta). See also *LaPine Technology Corp. v. Kyocera Corp.* (9th Cir. 1997) 130 F.3d 884, 888 (*LaPine*), overruled by *Kyocera Corp. v. Prudential-Bache* (9th Cir. 2003) 341 F.3d 987, 1000 (*Kyocera*).

Seventh, Eighth, Ninth, and Tenth Circuits took the opposite view.[10] As we discuss next, a majority of the Supreme Court in *Hall Street* decided the FAA was intended to provide exclusive criteria for review of arbitration awards.

### 2. Hall Street *and the Question of Preemption*

The *Hall Street* case arose from an arbitration agreement negotiated during litigation, to resolve an indemnification claim. The agreement was approved and entered as an order by the trial court. It provided: " 'The Court shall vacate, modify or correct any award: (i) where the arbitrator's findings of facts are not supported by substantial evidence, or (ii) where the arbitrator's conclusions of law are erroneous.' " (*Hall Street, supra,* 552 U.S. at pp. ___–___ [128 S.Ct. at pp. 1400–1401].) The trial court vacated the arbitrator's award and remanded for further consideration; at the time, the Ninth Circuit approved of contract provisions for expanded judicial review. (*Hall Street,* at p. ___ [128 S.Ct. at p. 1401]; see *LaPine, supra,* 130 F.3d at p. 888.) After the arbitrator ruled a second time, both parties sought modification, and both appealed from the trial court's judgment modifying the award. By that time, the Ninth Circuit had changed its view on the enforceability of judicial review provisions. (See *Kyocera, supra,* 341 F.3d at p. 1000.) It reversed the judgment. (*Hall Street,* at p. ___ [128 S.Ct. at p. 1401].)

█ After another ruling by the trial court modifying the award, and another reversal by the Ninth Circuit, the Supreme Court granted certiorari. A majority of the court agreed with the Ninth Circuit that the grounds for vacatur and modification provided by sections 10 and 11 of the FAA are exclusive. (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1401].) First, the majority rejected the argument that the nonstatutory "manifest disregard of the law" standard of review recognized by some federal courts supports the enforceability of contract provisions for additional grounds to vacate or modify an arbitration award. (*Id.* at p. ___ [128 S.Ct. at p. 1403].) It reasoned that the "manifest disregard" exception presumes a rule against general review for legal error, and should not be seen as a "camel's nose" under the arbitration tent. (*Id.* at pp. ___–___ [128 S.Ct. at pp. 1403–1404]; on "manifest disregard," see, e.g., *McCarthy v. Citigroup Global Markets Inc.* (1st Cir. 2006) 463 F.3d 87, 91–92.)

Next, the *Hall Street* majority disposed of the contention that allowing parties to contract for an expanded scope of review is consistent with the

---

A district court from the Southern District of New York enforced a provision for expanded review (*Fils et Cables d'Acier de Lens v. Midland Metals* (S.D.N.Y. 1984) 584 F.Supp. 240, 244); the Second Circuit did not weigh in on the question.

[10] *Chicago Typographical Union v. Chicago Sun-Times* (7th Cir. 1991) 935 F.2d 1501, 1505 (dicta); *UHC Management Co. v. Computer Sciences Corp.* (8th Cir. 1998) 148 F.3d 992, 997–998 (dicta); *Kyocera, supra,* 341 F.3d at page 1000; *Bowen v. Amoco Pipeline Co.* (10th Cir. 2001) 254 F.3d 925, 935–937.

FAA's primary goal of ensuring the enforcement of arbitration agreements. "[T]o rest this case on the general policy of treating arbitration agreements as enforceable as such would be to beg the question, which is whether the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1404].) The majority decided that, indeed, those textual features exist. It characterized the statutory grounds for review as remedies for "egregious departures from the parties' agreed-upon arbitration," such as corruption and fraud. (*Ibid.*) It viewed the directive in section 9 of the FAA, that the court " 'must grant' " confirmation " 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11,' " as a mandatory provision leaving no room for the parties to agree otherwise. (*Hall Street,* at p. ___ [128 S.Ct. at p. 1405].)

"Instead of fighting the text, it makes more sense to see the three provisions, §§ 9–11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process,' *Kyocera,* [*supra,*] 341 F.3d, at 998; cf. *Ethyl Corp. v. United Steelworkers of America,* 768 F.2d 180, 184 (CA7 1985), and bring arbitration theory to grief in post-arbitration process." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1405].)

Despite this strict reading of the FAA, the *Hall Street* majority left the door ajar for alternate routes to an expanded scope of review. "In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1406].)

Furthermore, the *Hall Street* majority recognized that the trial court's case management authority under rule 16 of the Federal Rules of Civil Procedure might support its order adopting the parties' agreement to review of the merits. However, it remanded for further proceedings on this point, concluding that it was "in no position to address the question now, beyond noting the claim of relevant case management authority independent of the FAA." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1407].)

In dissent, Justice Stevens, joined by Justice Kennedy, took issue with the majority's view of the policy served by the FAA. He argued that "in light of the historical context and the broader purpose of the FAA, §§ 10 and 11 are best understood as a shield meant to protect parties from hostile courts, not a sword with which to cut down parties' 'valid, irrevocable and enforceable' agreements to arbitrate their disputes subject to judicial review for errors of law.[11] § 2." (*Hall Street, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1409] (dis. opn. of Stevens, J.).) Justice Stevens agreed that "there may be additional avenues available for judicial enforcement of parties' fairly negotiated review provisions" (*id.* at p. ___ [128 S.Ct. at p. 1410]), but he would have resolved the conflict among the federal circuits in favor of the parties' freedom to supplement by contract the statutory grounds for vacatur and modification, "an agreement that does not even arguably offend any public policy whatsoever" (*id.* at p. ___ [128 S.Ct. at p. 1409]).

Justice Breyer also dissented. He too agreed with the majority that the FAA " 'is not the only way into court for parties wanting review of arbitration awards.' " (*Hall Street, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1410] (dis. opn. of Breyer, J.), quoting maj. opn. at p. ___ [128 S.Ct. at p. 1406].) Justice Breyer, however, would have remanded with instructions to affirm the trial court's judgment, apparently on the basis that the FAA had no effect on the court's independent authority to approve the parties' agreement as a matter of case management. (552 U.S. at p. ___ [128 S.Ct. at p. 1410].)

The dealers in this case urge us to follow the rationale of the *Hall Street* majority. They contend that any other construction of the CAA would result in its preemption by the FAA. Alternatively, they argue that *Hall Street* provides a persuasive analysis of the FAA that should be applied to the similar CAA provisions governing judicial review. We consider first the question of preemption, because if the dealers are correct on that point, it would be fruitless to consider alternate interpretations of state law.[12]

 Section 2 of the FAA, declaring the enforceability of arbitration agreements, "create[s] a body of federal substantive law of arbitrability,

---

[11] "In the years before the passage of the FAA, arbitration awards were subject to thorough and broad judicial review. See Cohen & Dayton, The New Federal Arbitration Law, 12 Va. L.Rev. 265, 270–271 (1926); Cullinan, Contracting for an Expanded Scope of Judicial Review in Arbitration Agreements, 51 Vand. L.Rev. 395, 409 (1998). In §§ 10 and 11 of the FAA, Congress significantly limited the grounds for judicial vacatur or modification of such awards in order to protect arbitration awards from hostile and meddlesome courts."

[12] At our invitation, the dealers also briefed the question whether the proceedings for judicial review of the arbitration award in this case are governed by the FAA, given the contract specification that "any arbitration conducted hereunder shall be governed by the United States Arbitration Act . . . ." The dealers contend this clause requires application of the FAA grounds for review, as strictly limited by *Hall Street*. DIRECTV responds that the FAA provisions governing judicial review are specific to federal courts; that the dealers waived

applicable to any arbitration agreement within the coverage of the Act." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927].) The FAA governs agreements in contracts involving interstate commerce, like those in this case. (*Southland Corp. v. Keating, supra,* 465 U.S. at pp. 10–11; *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 383–384 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*).) The United States Supreme Court has frequently held that state laws invalidating arbitration agreements on grounds applicable only to arbitration provisions contravene the policy of enforceability established by section 2 of the FAA, and are therefore preempted. (E.g., *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 686–688 [134 L.Ed.2d 902, 116 S.Ct. 1652]; *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 272–273 [130 L.Ed.2d 753, 115 S.Ct. 834]; *Perry v. Thomas* (1987) 482 U.S. 483, 490–491 [96 L.Ed.2d 426, 107 S.Ct. 2520]; *Southland Corp. v. Keating, supra,* 465 U.S. at p. 16; see *Cronus,* at p. 385.)

However, "the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings." (*Cronus, supra,* 35 Cal.4th at p. 389.) Sections 3 and 4 of the FAA, governing stays of litigation and petitions to enforce arbitration agreements, do not apply in state court. (*Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477, fn. 6 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*); *Southland Corp. v. Keating, supra,* 465 U.S. at p. 16, fn. 10; *Cronus,* at pp. 389–390; *Rosenthal, supra,* 14 Cal.4th at pp. 407–408.) As we have noted, the provisions for judicial review of arbitration awards in sections 10 and 11 of the FAA are directed to "the United States court in and for the district wherein the award was made." (Fn. 12, *ante.*) We have held that similar language in sections 3 and 4 of the FAA reflects Congress's intent to limit the application of those provisions to federal courts. (*Cronus,* at pp. 388–389.)

their FAA theory by failing to raise it in the trial court or on appeal; and that the contract calls only for the arbitration itself to be governed by the federal statute, not postarbitration proceedings in court.

We conclude that DIRECTV has the better argument. Sections 10 and 11 of the FAA refer to review by "the United States court in and for the district wherein the award was made." (9 U.S.C. §§ 10(a), 11.) The parties' contract did not specify whether enforcement proceedings were to be brought in state or federal court, providing generally that "[t]he decision of the arbitrators may be entered and enforced as a final judgment in any court of competent jurisdiction." DIRECTV's petition to vacate the award was filed, argued, and appealed in state court, and before the *Hall Street* decision both parties proceeded on the theory that the CAA was controlling. "The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240–241 [22 P.2d 715]; see also *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 404, p. 455.)

In several cases, California Courts of Appeal have rejected claims that the FAA grounds for reviewing arbitration awards preempt their CAA counterparts. (*SWAB Financial, LLC v. E\*Trade Securities, LLC* (2007) 150 Cal.App.4th 1181, 1195 [58 Cal.Rptr.3d 904]; *Ovitz v. Schulman* (2005) 133 Cal.App.4th 830, 851 [35 Cal.Rptr.3d 117]; *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1290 [79 Cal.Rptr.2d 726]; see also *Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1091–1092 [122 Cal.Rptr.2d 131] [FAA does not displace CAA provisions governing appealable orders].)[13] The *Siegel* court, after reviewing the legislative history of the FAA, noted that "[n]othing in the legislative reports and debates evidences a congressional intention that postaward and state court litigation rules be preempted so long as the basic policy upholding the enforceability of arbitration agreements remained in full force and effect." (*Siegel*, at p. 1289.)

Thus, as in *Cronus* and *Rosenthal*, the FAA's procedural provisions are not controlling, and the determinative question is whether CAA procedures conflict with the FAA policy favoring the enforcement of arbitration agreements. (*Cronus, supra*, 35 Cal.4th at pp. 390–391; *Rosenthal, supra*, 14 Cal.4th at pp. 408–410.)

 Before *Hall Street*, we would have had no difficulty concluding that enforcing agreements for judicial review on the merits is consistent with the fundamental purpose of the FAA. The high court has made it clear that the FAA does not "prevent[] the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate [citation], so too may they specify by contract the rules under which that arbitration will be conducted. Where . . . the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . . By permitting the courts to 'rigorously enforce' such agreements according to their terms [citation], we

---

[13] Other courts have reached similar conclusions. See *Trombetta v. Raymond James Financial Services, Inc.* (2006) 2006 PA Super 229 [907 A.2d 550, 568]; *DeBaker v. Shah* (Ct.App. 1994) 187 Wis.2d 252 [522 N.W.2d 268, 271], reversed on other grounds in *DeBaker v. Shah* (1995) 194 Wis.2d 104 [533 N.W.2d 464]; *Flexible Mfg. Systems Pty v. Super Products* (E.D.Wis. 1994) 874 F.Supp. 247, 249. Compare *M&L Power Services v. American Networks Intern.* (D.R.I. 1999) 44 F.Supp.2d 134, 139–142, holding that a "complete irrationality" standard articulated by the Rhode Island Supreme Court violated the policy established by section 2 of the FAA, and was therefore preempted in cases involving interstate commerce.

give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA." (*Volt, supra,* 489 U.S. at p. 479.)

The court has repeatedly ruled that the terms of the parties' agreement are controlling over considerations of expediency in the dispute resolution process. "After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes [citation], but to ensure that commercial arbitration agreements, like other contracts, ' "are enforced according to their terms," ' [citation], and according to the intentions of the parties [citation]." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 947 [131 L.Ed.2d 985, 115 S.Ct. 1920]; see also *Volt, supra,* 489 U.S. at p. 479; *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 220–221 [84 L.Ed.2d 158, 105 S.Ct. 1238].) The court has viewed the federal policy served by the FAA as "at bottom a policy guaranteeing the enforcement of private contractual arrangements." (*Mitsubishi Motors v. Soler Chrysler-Plymouth, supra,* 473 U.S. at p. 625; see also, e.g., *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 58 [131 L.Ed.2d 76, 115 S.Ct. 1212].)

The *Hall Street* majority, however, brushed aside policy considerations favoring the enforcement of contractual arbitration arrangements, concentrating instead on whether "the FAA has textual features at odds with enforcing a contract to expand judicial review following the arbitration." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1404].) Underlying the FAA provisions governing judicial review, it discerned "a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." (552 U.S. at p. ___ [128 S.Ct. at p. 1405].)

Nevertheless, we do not believe the *Hall Street* majority intended to declare a policy with preemptive effect in all cases involving interstate commerce.[14] *Hall Street* was a federal case governed by federal law; the

---

[14] Such an effect would be sweeping indeed in the commercial setting. Not only would state courts be barred from giving a more expansive interpretation to state law as it applies to agreements for merits review of arbitration awards, but state legislatures would be unable to specifically permit contract provisions for expanded review. (See, e.g., N.J. Stat. Ann. § 2A:23B-4(c) ["nothing in this act shall preclude the parties from expanding the scope of judicial review of an award by expressly providing for such expansion . . ."].) Arguably, statutory provisions for review of the merits in particular contexts, such as public contract arbitrations (see § 1296), would be precluded. The viability of public policy exceptions to the general rule of limited review would also be called into question. For example, when unwaivable statutory rights are at stake, this court has repeatedly held that review must be " 'sufficient to ensure that arbitrators comply with the requirements of the statute.' " (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 106,

court considered no question of competing state law. It reviewed the application of FAA provisions for judicial review that speak only to the federal courts. The court unanimously left open other avenues for judicial review, including those provided by state statutory or common law. (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1406], and p. ___ [128 S.Ct. at p. 1410] (dis. opns. of Stevens, J., and Breyer, J.).) While the court, of course, *decided* nothing about the viability of these alternatives, their mention in the majority opinion indicates that *Hall Street*'s holding on the effect of the FAA is a limited one.

Moreover, the *Hall Street* majority's disposition of the case before it suggests that its interpretation of sections 10 and 11 of the FAA does not preclude other grounds for review. Rather than simply affirming the reversal of the judgment modifying the arbitrator's award, the majority vacated and remanded for consideration of the trial court's authority to approve the parties' agreement as a matter of case management under the Federal Rules of Civil Procedure. Had the majority meant to impose a *uniform* national policy *requiring* judicial review solely on the grounds stated in the FAA, it would not have left open the possibility of trial court review under its "case management authority independent of the FAA." (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1407].)

■ We conclude that the *Hall Street* holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations. Furthermore, a reading of the CAA that permits the enforcement of agreements for merits review is fully consistent with the FAA "policy guaranteeing the enforcement of private contractual arrangements." (*Mitsubishi Motors v. Soler Chrysler-Plymouth, supra,* 473 U.S. at p. 625; see 9 U.S.C. § 2.)

### 3. Moncharsh *and the California Rule*

In *Moncharsh,* the parties' arbitration clause included no provision for an expanded scope of judicial review. (*Moncharsh, supra,* 3 Cal.4th at p. 7, fn. 1.) We considered and rejected the appellant's claim that the award was nevertheless reviewable for error of law on its face causing substantial injustice, a proposition which had some support in case law. (*Id.* at p. 28.) We reaffirmed "the general rule that an arbitrator's decision is not ordinarily reviewable for error by either the trial or appellate courts" (*id.* at p. 13), and

quoting *Shearson/American Express Inc. v. McMahon, supra,* 482 U.S. at p. 232; see also, e.g., *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 32, fn. 4 [114 L.Ed.2d 26, 111 S.Ct. 1647]; *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 456–457 [64 Cal.Rptr.3d 773, 165 P.3d 556]; *Aguilar v. Lerner* (2004) 32 Cal.4th 974, 983 [12 Cal.Rptr.3d 287, 88 P.3d 24]; *Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 276 [52 Cal.Rptr.2d 115, 914 P.2d 193]; *Moncharsh, supra,* 3 Cal.4th at p. 32.)

held that the statutory grounds for review were intended to implement that rule (*id.* at pp. 27–28). To that extent, our conclusions were consistent with those of the *Hall Street* majority. However, in several respects *Moncharsh* reflects a very different view of arbitration agreements and the arbitration statutes, as applied to the scope of judicial review. Therefore, we disagree with the dealers' argument that *Hall Street* is persuasive authority for a restrictive interpretation of the review provisions in the CAA.

■ *Moncharsh* began from the premise that " '[t]he scope of arbitration is . . . a matter of agreement between the parties' [citation], and ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission." ' [Citation.]" (*Moncharsh, supra*, 3 Cal.4th at p. 8.) " 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' [Citation.]" (*Id.* at p. 9.) "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive *because the parties have agreed that it be so*. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Id.* at p. 10.)

■ "Moreover, '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citations.]" (*Moncharsh, supra*, 3 Cal.4th at pp. 10–11.) "Thus, both because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.]" (*Id.* at p. 11.)

■ Our reasoning in *Moncharsh* centered not on statutory restriction of the parties' contractual options, but on the parties' intent and the powers of the arbitrators as defined in the agreement. These factors support the enforcement of agreements for an expanded scope of review. If the parties constrain the arbitrators' authority by requiring a dispute to be decided according to the rule of law, *and* make plain their intention that the award is reviewable for legal error, the general rule of limited review has been displaced by the parties' agreement. Their expectation is not that the result of the arbitration will be final and conclusive, but rather that it will be reviewed on the merits at the request of either party. That expectation has a foundation in the statutes

governing judicial review, which include the ground that "[t]he arbitrators exceeded their powers." (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).)

We have consistently recognized that "[a]n exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers. (*Advanced Micro Devices, Inc. v. Intel Corp.* [(1994)] 9 Cal.4th [362,] 375–376, 383 [36 Cal.Rptr.2d 581, 885 P.2d 994].) 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court.' (*Id.* at p. 375.)" (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185 [77 Cal.Rptr.3d 613, 184 P.3d 739] (*Gueyffier*).) Our review in *Moncharsh* of the CAA's legislative history confirms that while the statutory grounds for correction and vacation of arbitration awards do not ordinarily include errors of law, contractual limitations on the arbitrators' powers can alter the usual scope of review.

The current version of the CAA was enacted following a study by the California Law Revision Commission, undertaken at the Legislature's direction. (*Moncharsh, supra,* 3 Cal.4th at p. 24.) "The commission's report was transmitted to the Governor in December 1960. (Recommendation and Study Pertaining to Arbitration, [*supra,* 3 Cal. Law Revision Com. Rep.].) On the subject of the scope of judicial review, the report explained that, 'Nothing in the California statute defines the permissible scope of review by the courts. Numerous court rulings have, however, developed the following basic principles which set the limits for any court review: [¶] . . . [¶] (2) Merits of an arbitration award either on questions of fact or of law may not be reviewed *except as provided for in the statute* in the absence of some limiting clause in the arbitration agreement.' " (*Moncharsh,* at p. 24, quoting Recommendation and Study Pertaining to Arbitration, *supra,* p. G-53 (Arbitration Study).)

"The Arbitration Study emphasized that arbitration should be the end of the dispute and that 'the ordinary concepts of judicial appeal and review are not applicable to arbitration awards. Settled case law is based on this assumption.' (Arbitration Study, *supra,* [3 Cal. Law Revision Com. Rep.,] p. G-54.)[15] After surveying the state of the law, the report concluded that although the California statutes do not 'attempt to express the exact limits of

---

[15] The study makes it clear that the assumption noted above is drawn from the normal form of agreement to conclusive arbitration, and the statutes accommodating that norm. "Both the agreement between the parties that the award shall be final and binding and the statutory treatment of arbitration agreements suggest that the ordinary concepts of judicial appeal and review are not applicable . . . ." (Arbitration Study, *supra,* 3 Cal. Law Revision Com. Rep., p. G-54.)

court review of arbitration awards, . . . no good reason exists to codify into the California statute the case law as it presently exists.' (*Ibid.*) Further, the report recommended that the 'present grounds for vacating an award should be left substantially unchanged.' (*Id.* at p. G-57.)" (*Moncharsh, supra,* 3 Cal.4th at p. 25.) Considering the nature of the revisions incorporated in the CAA, this court concluded that the Legislature intended to "adopt the position taken in case law and endorsed in the Arbitration Study, that is, 'that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute.' " (*Moncharsh,* at p. 25, quoting *Crofoot, supra,* 119 Cal.App.2d at p. 186.)

The *Crofoot* rule does not suggest that review of the merits must rest on a nonstatutory basis. As discussed below, *Crofoot*'s reference to a limiting clause in the agreement pertains to limits on the arbitrators' powers. Thus, the merits of an award may come within the ambit of the statutory grounds of review for excess of the arbitrators' powers. (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).) However, absent such a limitation, the scope of review provided by statute is quite limited. In *Moncharsh,* we noted that section 1286.2 includes no provision for review of the merits like that found in section 1296, governing public construction contract arbitrations.[16] (*Moncharsh, supra,* 3 Cal.4th at pp. 25–26.) The *Crowell* court, and the Court of Appeal below, considered section 1296 an indication that the Legislature did not intend to permit review of the merits by agreement. (*Crowell, supra,* 95 Cal.App.4th at pp. 737–738.) This view is mistaken. In *Moncharsh* we inferred from section 1296 that "the Legislature did not intend to confer traditional judicial review in private arbitration cases." (*Moncharsh,* at p. 26.) However, the failure to provide for that scope of review *by statute* does not mean the parties themselves may not do so *by contract.* Moreover, section 1296 authorizes review for legal error without any specific agreement to that effect. The parties to a public construction contract need only provide that the award must be supported by law and substantial evidence. Thus, section 1296 says nothing about the Legislature's intent regarding contracts expressly permitting review on the merits.

Our holding in *Moncharsh* that the CAA incorporates the *Crofoot* rule is irreconcilable with the notion that the parties are barred from agreeing to limit the arbitrators' authority by subjecting their award to review on the merits. The history of the FAA, as reviewed by the *Hall Street* majority,

---

[16] Section 1296 states: "The parties to a construction contract with a public agency may expressly agree in writing that in any arbitration to resolve a dispute relating to the contract, the arbitrator's award shall be supported by law and substantial evidence. If the agreement so provides, a court shall, subject to Section 1286.4, vacate the award if after review of the award it determines either that the award is not supported by substantial evidence or that it is based on an error of law."

includes no similar indication that Congress intended the statutory grounds for review to operate as default provisions, providing only limited review unless the parties agree otherwise. (*Hall Street, supra,* 552 U.S. at pp. ___, ___ fn. 7 [128 S.Ct. at pp. 1405, 1406, fn. 7].) Nor did *Hall Street* address whether the FAA provision for vacatur "where the arbitrators exceeded their powers" (9 U.S.C. § 10(a)(4)) is applicable when the agreement specifically limits the arbitrators' powers by providing for an award governed by law and reviewable for legal error. Therefore, *Hall Street*'s FAA analysis is inapposite.

 In California, the policy favoring arbitration without the complications of traditional judicial review is based on the parties' expectations as embodied in their agreement, and the CAA rests on the same foundation. "Accordingly, policies favoring the efficiency of private arbitration as a means of dispute resolution must sometimes yield to its fundamentally contractual nature, and to the attendant requirement that arbitration shall proceed *as the parties themselves have agreed.*" (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 831 [88 Cal.Rptr.2d 366, 982 P.2d 229].) The scope of judicial review is not invariably limited by statute; rather, "the parties, simply by agreeing to arbitrate, are deemed to accept limited judicial review *by implication* . . . ." (*Ibid.*) It follows that they may expressly agree to accept a broader scope of review.[17]

Neither *Crofoot*, the Arbitration Study, nor *Moncharsh* had occasion to explore the nature of the "limiting clause in the arbitration agreement" that all these sources recognized as an exception to the usual rule barring review of the merits of an award. (*Crofoot, supra,* 119 Cal.App.2d at p. 186; Arbitration Study, *supra,* 3 Cal. Law Revision Com. Rep., p. G-53; see *Moncharsh, supra,* 3 Cal.4th at p. 25.) In the case before it, the *Crofoot* court rejected the claim that the parties' agreement limited the arbitrator's powers. (*Crofoot, supra,* 119 Cal.App.2d at pp. 186–187.) However, the two authorities cited in

---

[17] Law review commentary has tended to support this view. (Goldman, *Contractually Expanded Review of Arbitration Awards* (2003) 8 Harv. Negot. L.Rev. 171, 183–184 (Goldman); Hulea, *Contracting to Expand the Scope of Review of Foreign Arbitral Awards: An American Perspective* (2003) 29 Brook. J. Int'l L. 313, 351 (Hulea); Moses, *Can Parties Tell Courts What to Do? Expanded Judicial Review of Arbitral Awards* (2004) 52 U. Kan. L.Rev. 429, 430–431 (Moses); Rau, *Contracting Out of the Arbitration Act* (1997) 8 Am. Rev. Int'l Arb. 225, 230–231 (Rau); but see Schmitz, *Ending a Mud Bowl: Defining Arbitration's Finality Through Functional Analysis* (2002) 37 Ga. L.Rev. 123, 189–190; Smit, *Contractual Modification of the Scope of Judicial Review of Arbitral Awards* (1997) 8 Am. Rev. Int'l Arb. 147, 150.)

The approach to judicial review outlined in the concurring and dissenting opinion is a novel one. Whatever its merits may be, the parties in this case certainly did not agree to such a scope of review. Nor is it reflected in any reported case. If "the CAA permits parties to clearly define the limits to an arbitrator's powers," it is unclear why they should be allowed only "some measure of judicial review" defined by a court, instead of the scope of review authorized by their contract and the statutes permitting review for excess of the arbitrator's powers. (Conc. & dis. opn., *post,* at p. 1375.)

*Crofoot* that discuss contract limitations suggest the scope of judicial review may be expanded by provisions restricting arbitrators' usual broad powers.

*Crofoot* quoted *Sapp v. Barenfeld* (1949) 34 Cal.2d 515, 523 [212 P.2d 233], for the proposition that " '[a]rbitrators, *unless specifically required to act in conformity with rules of law,* may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' " (*Crofoot, supra,* 119 Cal.App.2d at p. 185, italics added; see also *Moncharsh, supra,* 3 Cal.4th at pp. 10–11.) The *Sapp* court followed this statement with a citation to *Gerdetz v. Central Oregon Irr. Co.* (1917) 83 Ore. 576 [163 P. 980], where the court reviewed the parties' agreement and observed: "We note that no restriction is placed upon the arbitrators in any degree within their respective provinces. *No reservation is made for reviewing any decision of law or fact.* The case is not like many of those cited in the plaintiff's brief where the arbitrators were required to determine questions of law according to legal rules and the decisions of the courts on identical matters. Neither is it like other instances where the statute requires the award to be made agreeable to certain precepts or in pursuance of an order or rule of court where the award must be subject to the approval of the tribunal making the order. In the instant case the unrestricted terms of the submission differentiate it from all such precedents. It is said in 5 C. J. 183: [¶] 'In the absence of a special requirement, the arbitrators are not bound to decide according to law, and therefore in such case a mistaken construction of the law has been held not sufficient ground of avoidance of an award . . . .' " (*Gerdetz, supra,* 163 P. at pp. 981–982, italics added.)

The *Crofoot* court also relied on Kagel, *California Arbitration Statute* (1950) 38 Cal. L.Rev. 799, 825 et seq. (Kagel). (*Crofoot, supra,* 119 Cal.App.2d at p. 185.) There, the author stated: "Whether an arbitrator's decision on questions of law and facts is final and not subject to judicial review seems to depend on the submission agreement. . . . If the submission agreement is qualified and provides, for example, that an arbitrator should 'make his judgment and award according to the legal rights of the parties,' . . . apparently the award is subject to judicial review." (Kagel, *supra,* at p. 827.)[18] After quoting *Sapp v. Barenfeld, supra,* 34 Cal.2d 515, to the same

---

[18] In a footnote, Kagel refers to *Utah Const. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156 [162 P. 631]. (Kagel, *supra,* 38 Cal. L.Rev. at p. 827, fn. 126.) The agreement in that case included a clause calling for the arbitrator to " 'make his judgment and award, according to the legal right of the parties . . . .' " (174 Cal. at p. 161.) The court noted that this provision "bound the arbitrator to decide in conformity with the law, and left him without authority to do otherwise." (*Id.* at pp. 161–162.) However, it then said: "Our final conclusion on the merits renders it unnecessary to determine whether the submission agreement, when properly construed, did or did not empower him to decide the law wrongly as well as rightly. We may assume, for the purposes of the case, that he was empowered only to decide correctly as to the

effect as in *Crofoot*, Kagel concluded: "The wording of the arbitration clause or submission agreement is important then, affecting the limits of review." (Kagel, *supra*, at p. 827.)

The Arbitration Study discussed in *Moncharsh* includes a similar observation. Regarding the statutory ground of review for excess of the arbitrators' powers, the study stated: "Arbitrators may base their decision on broad principles of justice and equity, but if the submission agreement specifically requires an arbitrator to act in conformity with rules of law, the arbitrator exceeds his authority if his decision is not based on rules of law." (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep, p. G-56, fns. omitted.)

These early authorities might be read to support a rule that a provision simply requiring the arbitrators to follow the rule of law places it beyond their powers to apply the law incorrectly, so that the award may be vacated or modified on that basis. However, the Legislature has since enacted a similar rule for public contract arbitrations. (§ 1296; see fn. 16, *ante*, and accompanying text.)[19] Had it intended to make review of the merits generally available on that basis, presumably it would have included a similar provision in sections 1286.2 and 1286.6. Moreover, requiring the parties to *expressly* provide for an expanded scope of review is consistent with the usual expectations of parties to arbitration agreements, who accept the risk of legal error in exchange for the benefits of a quick, inexpensive, and conclusive resolution. (See *Moncharsh, supra*, 3 Cal.4th at pp. 11–12.)

 A provision requiring arbitrators to apply the law leaves open the possibility that they are empowered to apply it "wrongly as well as rightly." (*Utah Const. Co. v. Western Pac. Ry. Co., supra*, 174 Cal. at p. 163; see *Baize, supra*, 142 Cal.App.4th at pp. 301–302.) As we recently observed: "When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision. (*Moshonov v. Walsh* [(2000)] 22 Cal.4th [771,] 775–777 [94 Cal.Rptr.2d 597, 996 P.2d 699]; *Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at pp. 372–375; *Moncharsh* . . . , *supra*, 3 Cal.4th at p. 28.) Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error,

---

law, and proceed upon that theory without deciding the point." (*Id.* at p. 163.) The court reviewed the award and found no legal error. (*Id.* at pp. 163–167.)

[19] DIRECTV has requested that we take judicial notice of the legislative history of section 1296. We grant the request, but do not find the history useful.

for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' (*Moshonov v. Walsh*, at pp. 775–776, quoting *Moncharsh . . .* at p. 28.)" (*Gueyffier, supra*, 43 Cal.4th at p. 1184.)

Therefore, to take themselves out of the general rule that the merits of the award are not subject to judicial review, the parties must clearly agree that legal errors are an excess of arbitral authority that is reviewable by the courts. Here, the parties expressly so agreed, depriving the arbitrators of the power to commit legal error. They also specifically provided for judicial review of such error.[20] We do not decide here whether one or the other of these clauses alone, or some different formulation, would be sufficient to confer an expanded scope of review. However, we emphasize that parties seeking to allow judicial review of the merits, and to avoid an additional dispute over the scope of review, would be well advised to provide for that review explicitly and unambiguously. (Cf. *Advanced Micro Devices, Inc. v. Intel Corp., supra*, 9 Cal.4th at p. 383.)

Those Court of Appeal opinions refusing to enforce specific provisions for judicial review of the merits are disapproved insofar as they conflict with our analysis. (*Crowell v. Downey Community Hospital Foundation, supra*, 95 Cal.App.4th 730, 735; *Oakland-Alameda County Coliseum Authority v. CC Partners, supra*, 101 Cal.App.4th 635, 645; *Old Republic Ins. Co. v. St. Paul Fire & Marine Ins. Co., supra*, 45 Cal.App.4th 631, 638–639.) The objections raised in these cases are outweighed by the freedom of contract that is fundamental to arbitration, by the availability of an expanded scope of review in other contexts, and by the considerable public and private benefits that such review can provide.

Review on the merits has been deemed incompatible with the goals of finality and informality that are served by arbitration and protected by the arbitration statutes. (*Crowell, supra*, 95 Cal.App.4th at p. 735; *Old Republic, supra*, 45 Cal.App.4th at p. 638.) However, as discussed above, those policies draw their strength from the agreement of the parties. It is the parties who are best situated to weigh the advantages of traditional arbitration against the benefits of court review for the correction of legal error.

Arbitration provisions calling for review of the merits have also been condemned as attempts to create jurisdiction where none exists. (*Crowell, supra*, 95 Cal.App.4th at p. 739; *Old Republic, supra*, 45 Cal.App.4th at pp. 638–639.) But the CAA authorizes review on the ground that an award exceeds the arbitrators' powers. (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).)

---

[20] The arbitration clause states: "The arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error."

Because those powers are circumscribed by the terms of the parties' agreement (*Gueyffier, supra,* 43 Cal.4th at p. 1185; *Moncharsh, supra,* 3 Cal.4th at p. 8), there is no jurisdictional impediment to contracts limiting the arbitrators' authority by subjecting their award to correction for legal error.

Some courts have expressed concern that arbitration is so different from judicial proceedings that courts would be unable to adequately review the substance of arbitrators' decisions. (*National Union, supra,* 69 Cal.App.4th at pp. 715–716; *Old Republic, supra,* 45 Cal.App.4th at p. 638.) This problem has not appeared in those circumstances where arbitration awards have been reviewed for legal error. Section 1296 has provided for review of the merits in public construction contract arbitrations since 1979. Arbitration awards have been reviewed to determine whether the arbitrators complied with statutes conferring unwaivable rights. (See, e.g., *Aguilar v. Lerner, supra,* 32 Cal.4th 974, 982–983; *Board of Education v. Round Valley Teachers Assn., supra,* 13 Cal.4th 269, 276–277.) Until recently, federal courts have reviewed arbitration awards under agreements calling for an expanded scope of review. (See fn. 9, *ante.*) Obstacles to effective review have not been evident in any of these settings.[21] Problems with the record are not reflected in the cases, but in the event they arise, there is a ready solution in the familiar rule that the decision under review is presumed correct on matters where the record is silent. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 [104 Cal.Rptr.2d 377, 17 P.3d 735]; see *Lopes v. Millsap* (1992) 6 Cal.App.4th 1679, 1685 [8 Cal.Rptr.2d 814]; Goldman, *supra,* 8 Harv. Negot. L.Rev. at p. 187.)

To the extent the concern with reviewability arises from apprehension that permitting review on the merits would open the door to contracts imposing unfamiliar standards of review, it appears to be unfounded. We have discovered no case where the parties attempted to make the courts apply an unusual standard of review. Instead, as in this case, they have required the arbitrators to apply legal standards, resulting in awards that can be reviewed in traditional fashion. (See Goldman, *supra,* 8 Harv. Negot. L.Rev. at p. 186.) We need not speculate about provisions calling for bizarre modes of decision, but we note that arbitration agreements are "as enforceable as other contracts, but not more so." (*Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395, 404, fn. 12 [18 L.Ed.2d 1270, 87 S.Ct. 1801]; *Cronus, supra,* 35 Cal.4th at p. 384.) Thus, just as the parties to any contract are limited in the constraints they may place on judicial review, an arbitration agreement providing that a "judge would review the award by flipping a coin or studying the entrails of a dead fowl" would be unenforceable. (*LaPine, supra,* 130 F.3d 884, 891 (conc.

---

[21] It is noteworthy that the Court of Appeal below, despite its holding limiting the scope of review, had no difficulty examining the merits of the arbitrators' decision on the alternative assumption that the award was reviewable for legal error.

opn. of Kozinski, J.); see Cole, *Managerial Litigants? The Overlooked Problem of Party Autonomy in Dispute Resolution* (2000) 51 Hastings L.J. 1199, 1263 (Cole).)

The benefits of enforcing agreements like the one before us are considerable, for both the parties and the courts. The development of alternative dispute resolution is advanced by enabling private parties to choose procedures with which they are comfortable. Commentators have observed that provisions for expanded judicial review are a product of market forces operating in an increasingly "judicialized" arbitration setting, with many of the attributes of court proceedings. The desire for the protection afforded by review for legal error has evidently developed from the experience of sophisticated parties in high stakes cases, where the arbitrators' awards deviated from the parties' expectations in startling ways. (Goldman, *supra*, 8 Harv. Negot. L.Rev. at pp. 172–173; Cole, *supra*, 51 Hastings L.J. at p. 1243; Brunet, *Replacing Folklore Arbitration with a Contract Model of Arbitration* (1999) 74 Tul. L.Rev. 39, 40–42, 52–57, 62–63; Younger, *Agreements to Expand the Scope of Judicial Review of Arbitration Awards* (1999) 63 Alb. L.Rev. 241.)

The judicial system reaps little benefit from forcing parties to choose between the risk of an erroneous arbitration award and the burden of litigating their dispute entirely in court. Enforcing contract provisions for review of awards on the merits relieves pressure on congested trial court dockets. (See *Crowell, supra*, 95 Cal.App.4th at pp. 752–753 (dis. opn. of Nott, J.); *LaPine, supra*, 130 F.3d at pp. 888–889; *Fils et Cables d'Acier de Lens v. Midland Metals, supra*, 584 F.Supp. at p. 244; Moses, *supra*, 52 U. Kan. L.Rev. at p. 443; Goldman, *supra*, 8 Harv. Negot. L.Rev. at p. 184; Hulea, *supra*, 29 Brook. J. Int'l L. at pp. 353–354.) Courts are spared not only the burden of conducting a trial, but also the complications of discovery disputes and other pretrial proceedings. Incorporating traditional judicial review by express agreement preserves the utility of arbitration as a way to obtain expert factual determinations without delay, while allowing the parties to protect themselves from perhaps the weakest aspect of the arbitral process, its handling of disputed rules of law. (See Rau, *supra*, 8 Am. Rev. Int'l Arb. at p. 233; Hulea, *supra*, 29 Brook. J. Int'l L. at p. 354.)

There are also significant benefits to the development of the common law when arbitration awards are made subject to merits review by the parties' agreement. "[I]f courts are reduced to the function of merely enforcing or denying arbitral awards, without an opportunity to discuss the reasoning for the arbitral decision, the advancement of the law is stalled, as arbitral decisions carry no precedential value. [Fn. omitted.] Thus, expansion of judicial review gives the courts of first instance the opportunity to establish a

record, and to include the reasoning of expert arbitrators into the body of the law in the form of written decisions. This procedure better advances the state of the law and facilitates the necessary beneficial input from experts in the field." (Hulea, *supra*, 29 Brook. J. Int'l L. at pp. 354–355.)

■ These advantages, obtained with the consent of the parties, are substantial. As explained in *Moncharsh*, the drafters of the CAA established the statutory grounds for judicial review with the expectation that arbitration awards are ordinarily final and subject to a restricted scope of review, but that parties may limit the arbitrators' authority by providing for review of the merits in the arbitration agreement. (*Moncharsh, supra*, 3 Cal.4th at p. 25.) The Court of Appeal erred by refusing to enforce the parties' clearly expressed agreement in this case.

### B. *The Award Permitting Classwide Arbitration*

Two of the three arbitrators below decided the dealers could pursue arbitration on a classwide basis, although the parties' contract did not mention classwide arbitration. The Court of Appeal agreed with this determination. The contract calls for the arbitrators to apply California substantive law, while following the procedural requirements of AAA rules and the FAA.[22]

The Court of Appeal, and the arbitrators in the majority, viewed the right to pursue classwide arbitration as a substantive one under *Keating, supra*, 31 Cal.3d 584, and *Blue Cross, supra*, 67 Cal.App.4th 42. The court concluded that these cases "give[] arbitrators discretion to order classwide arbitration even where the arbitration agreement is silent on that issue, in divergence from the general rules of contract interpretation that terms are not to be inserted into contracts."

■ This reasoning suffers from several lapses. Assuming the right to classwide arbitration may be viewed as substantive rather than procedural, a question we do not address here, the *Keating* rule is that *courts* have the authority to order classwide arbitration when an arbitration clause appears in a contract of adhesion, and "gross unfairness would result from the denial of opportunity to proceed on a classwide basis . . . ." (*Keating, supra*, 31 Cal.3d

---

[22] The arbitration clause provides in relevant part: "Any dispute or claim arising out of the interpretation, performance, or breach of this Agreement . . . shall be resolved only by binding arbitration, at the request of either party, in accordance with the rules of the American Arbitration Association . . . . The arbitrators shall apply California substantive law to the proceeding, except to the extent Federal substantive law would apply to any claim." The clause further specifies: "This Section and any arbitration conducted hereunder shall be governed by the United States Arbitration Act (9 U.S.C. Section 1, et seq.)."

at p. 613; see also *Blue Cross, supra*, 67 Cal.App.4th at pp. 52–55.) The *Keating* court did not speak to whether *arbitrators* have that authority. We have since held that whether an arbitration clause is unconscionable "is for the courts to decide, not an arbitrator." (*Discover Bank v. Superior Court, supra*, 36 Cal.4th at p. 171.) In any event, here the dealers did not claim and the arbitrators did not find that the contract was adhesive, or that a denial of classwide arbitration would lead to gross unfairness.

Furthermore, the majority arbitrators did not need to turn to *Keating* for authority to order classwide arbitration. The AAA rules invoked in the arbitration clause expressly confer that power on the arbitrators. Their task under the relevant rule was to "determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." (AAA, Supplementary Rules for Class Arbitrations (Oct. 2003), rule 3.) DIRECTV claims that in making this decision, the arbitrators in the majority violated a provision of the AAA rules stating: "In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." (*Ibid.*)

DIRECTV appears to be correct. The majority award referred both to the *Keating* rule and to AAA rules and policy. The policy specifying that AAA "will *administer* demands for class arbitration . . . if . . . the agreement is silent with respect to class claims" (AAA, Policy on Class Arbitrations (July 14, 2005), italics added) was misquoted in the award as stating that AAA "will *admit* demands for class arbitration" when the agreement is silent. The majority then relied on that proposition to support the conclusion that "the clause construction aspect under the Association rules provides for class arbitration to be allowed unless the arbitrators find that the arbitration clause forbids it." Thus, the majority does seem to have considered the existence of AAA provisions governing classwide arbitration as a factor favoring the procedure.

AAA's class arbitration policy is based on the *Bazzle* decision.[23] The *Bazzle* plurality declared: "[T]he relevant question here is what *kind of*

---

[23] In relevant part, the policy states: "On October 8, 2003, in response to the ruling of the United States Supreme Court in *Green Tree Financial Corp. v. Bazzle*, the American Arbitration Association issued its Supplementary Rules for Class Arbitrations to govern proceedings brought as class arbitrations. In *Bazzle*, the Court held that, where an arbitration agreement was silent regarding the availability of class-wide relief, an arbitrator, and not a court, must decide whether class relief is permitted. Accordingly, the American Arbitration Association will administer demands for class arbitration pursuant to its Supplementary Rules

*arbitration proceeding* the parties agreed to. That question does not concern a state statute or judicial procedures, cf. [*Volt, supra,*] 489 U.S. 468, 474–476 . . . . It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question." (*Bazzle, supra,* 539 U.S. at pp. 452–453 (plur. opn. of Breyer, J.).) We express no view on whether the terms of this arbitration clause are consistent with conducting arbitration on a classwide basis. Instead of deciding that question, the majority arbitrators misapplied AAA rules and policy as well as the *Keating* rule. Under the circumstances, we deem it appropriate to permit the arbitration panel to reconsider the availability of classwide arbitration as a matter of contract interpretation and AAA arbitration procedure.

### III. DISPOSITION

We reverse the judgment of the Court of Appeal, with directions to instruct the trial court to vacate the award so that the arbitrators may redetermine whether the arbitration may proceed on a classwide basis.

Kennard, J., Baxter, J., Werdegar, J., and Chin, J., concurred.

**BAXTER, J.,** Concurring.—I join fully in the majority opinion, including its principal holding that, under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.), judicial review of the merits of an arbitration award is permissible where, as here, the contracting parties have expressly agreed that the arbitrators shall have no power to commit errors of law and that the award may be vacated or corrected on appeal for legal error.

I write separately, however, to highlight the majority's point that "arbitration agreements are 'as enforceable as other contracts, *but not more so.*' [Citations.]" (Maj. opn., *ante,* at p. 1362, italics added.) The majority correctly observes that, just as the parties to any contract are limited in the constraints they may place on judicial review, parties to an arbitration agreement may not contractually secure an arbitrary method of review. (*Ibid.*) Similarly, just as parties to a court action may appeal only a final judgment and certain interlocutory judgments and orders (Code Civ. Proc., §§ 904, 904.1, 904.2), parties proceeding under the California Arbitration Act may obtain confirmation, correction, or vacation only of an arbitral decision that constitutes an "award" within the act's contemplation (Code Civ. Proc., § 1285; see Code Civ. Proc., § 1283.4 [providing that an award shall include "a determination of all the questions submitted to the arbitrators the decision

---

for Class Arbitrations if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation or joinder of claims." (AAA, Policy on Class Arbitrations, *supra.*)

of which is necessary in order to determine the controversy"]). Thus, if parties litigating in court may not create premature appellate jurisdiction by mutual agreement (see, e.g., *Hill v. City of Clovis* (1998) 63 Cal.App.4th 434 [73 Cal.Rptr.2d 638]), it is questionable whether parties to an arbitration agreement may contract to obtain premature judicial merit review of arbitral decisions that are labeled as "awards," but which in substance merely resolve one or more legal or factual issues pertaining to only a portion of the controversy submitted to the arbitrators for their determination. Our court has not addressed this issue, and it has not been raised or litigated in the instant case.

For the record, at least one Court of Appeal decision indicates that arbitrators have discretion to utilize multiple, incremental, or successive awards to finally decide an arbitrable controversy, and that parties may petition to confirm, correct, or vacate such incremental awards. (*Roehl v. Ritchie* (2007) 147 Cal.App.4th 338 [54 Cal.Rptr.3d 185] [merit review not implicated]; see generally 3 Oehmke, Commercial Arbitration (3d ed. 2004 & 2007 supp.) § 122:1.) Nonetheless, there may be limitations under the California Arbitration Act concerning the types of incremental or interim-type arbitral decisions that will validly support a petition for immediate judicial review. Indeed, access to merit review on an unlimited piecemeal basis may detract from the identified benefits of such review (see maj. opn., *ante*, at pp. 1362–1364), and also may saddle the judiciary with burdens that the drafters of our state act did not intend.

Accordingly, I generally agree that "[t]he California rule is that the parties may obtain judicial review of the merits by express agreement" (maj. opn., *ante*, at p. 1340), and that "[e]nforcing contract provisions for review of awards on the merits relieves pressure on congested trial court dockets" (*id.* at p. 1363). I reserve judgment, however, as to what if any limitations may exist with regard to such agreements, particularly when they purport to require fragmented review of the individual issues that are part and parcel of the arbitrable controversy.

**MORENO, J.,** Concurring and Dissenting.—I agree with the majority to the extent it holds that parties may define the arbitrator's powers in such a way as to broaden somewhat the scope of judicial review beyond the usual narrow grounds for such review set forth in *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*). But I disagree that parties may oblige courts to undertake full-scale judicial review of legal error in arbitration awards. Rather, the relevant statutes and the pertinent legislative history reveal a legislative intent to circumscribe the scope of judicial review and defer to the judgment of the arbitrator. As elaborated below, the statutes permit an arbitration agreement to be structured in such a

way as to compel a court to vacate an award when the arbitrator, in addressing legal questions, has acted arbitrarily and unreasonably, such as departing from clearly defined contractual terms or from clear legal principles found in the body of law that the parties have agreed should be used to settle the dispute. On the other hand, when an arbitrator's answer to a legal question is not clearly erroneous, for example, when he or she reasonably answers a legal question in which there is no settled precedent, the statute does not authorize a court to vacate an arbitrator's award merely because it disagrees with the arbitrator's conclusions, no matter what the arbitration agreement provides. Because the arbitrators in this case acted reasonably in addressing a question of unsettled law, I would affirm the judgment of the Court of Appeal.

## I.

I begin the analysis by stating the obvious, although the point may be obscured by the majority's rhetoric regarding freedom of contract. Although arbitration is created by contract, and the terms of the arbitration are dictated by contractual provisions, courts are not parties to arbitration agreements, and they are not bound by their terms. Parties can agree that a legal dispute arising from their arbitration will be settled by the California Supreme Court, but this court is not bound by that agreement. The judicial acts of confirming, correcting or vacating arbitration awards are governed by statute, and the parties have no power to alter the circumstances under which such acts occur except to the extent that the relevant statutes permit such alteration. I therefore turn to an analysis of the governing statutes.

Code of Civil Procedure section 1286[1] provides that if a petition to confirm an arbitration award under the California Arbitration Act (CAA) is duly served and filed, "the court *shall* confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (Italics added.) Section 1286.2 provides that a court petitioned to confirm an arbitration award "shall vacate the award if the court determines any of the following: [¶] (1) The award was procured by corruption, fraud or other undue means. [¶] (2) There was corruption in any of the arbitrators. [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator. [¶] (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. [¶] (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the

---

[1] All statutory references are to this code unless otherwise indicated.

controversy or by other conduct of the arbitrators contrary to the provisions of this title. [¶¶ (6) An arbitrator making the award [failed to make certain required disclosures or to disqualify himself or herself after properly requested to do so by the parties]." Section 1286.6 provides grounds for correction when there is evidence of miscalculation or mistake in the award, or the arbitrator committed errors that go to form rather than substance. Section 1287.2 provides for dismissal if a court determines that any person named as a respondent was in fact not a party to the arbitration or bound by the arbitration award.

The United States Supreme Court recently rejected the notion that similarly worded provisions in the Federal Arbitration Act (FAA) were merely intended to be default provisions, to be used when the parties had not agreed otherwise. "On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.' There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies. This does not sound remotely like a provision meant to tell a court what to do just in case the parties say nothing else." (*Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576 [170 L.Ed.2d 254, 128 S.Ct. 1396, 1405] (*Hall Street*).) Similarly, I see nothing malleable about the language of section 1286 that "the court *shall* confirm the award as made . . . unless in accordance with this chapter" it corrects or vacates the award or dismisses the proceedings (italics added).

The United States Supreme Court also considered whether the FAA "has textual features at odds with enforcing a contract to expand judicial review following the arbitration." (*Hall Street, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1404].) "To that particular question we think the answer is yes, that the text compels a reading of the §§ 10 and 11 categories as exclusive. To begin with, even if we assumed §§ 10 and 11 could be supplemented to some extent, it would stretch basic interpretive principles to expand the stated grounds to the point of evidentiary and legal review generally. Sections 10 and 11, after all, address egregious departures from the parties' agreed-upon arbitration: 'corruption,' 'fraud,' 'evident partiality,' 'misconduct,' 'misbehavior,' 'exceed[ing] . . . powers,' 'evident material miscalculation,' 'evident material mistake,' 'award[s] upon a matter not submitted;' the only ground with any softer focus is 'imperfect[ions],' and a court may correct those only if they go to '[a] matter of form not affecting the merits.' Given this emphasis on extreme arbitral conduct, the old rule of *ejusdem generis* has an implicit lesson to teach here. Under that rule, when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows. Since a general term included in the text is normally so limited, then surely a statute with no textual hook for

expansion cannot authorize contracting parties to supplement review for specific instances of outrageous conduct with review for just any legal error. 'Fraud' and a mistake of law are not cut from the same cloth." (*Hall Street, supra,* 552 U.S. at pp. ___–___ [128 S.Ct. at pp. 1404–1405].)

Applying the same principle of *ejusdem generis* here, the grounds for vacatur under section 1286.2 also involve "egregious departures from the parties' agreed-upon arbitration" (*Hall Street, supra,* 552 U.S. at p. ___ [128 S.Ct. at p. 1404]): "corruption," "fraud," "misconduct," refusal to make statutorily required disclosures or comply with statutory disqualification procedures, and prejudicial refusal to allow reasonable postponement requests or admission of material evidence. As explained at greater length below, ordinary errors of law do not fall within the above class.

The single "textual hook" on which the majority seeks to hang its expansion of judicial review is the statutory provision that the award may be vacated when "[t]he arbitrators exceeded their powers." (§ 1286.2, subd. (a)(4).) It is well established that arbitrators do not exceed their powers merely by committing legal error. (*Moncharsh, supra,* 3 Cal.4th at p. 28.) As one Court of Appeal summarized the case law: "An arbitrator exceeds his powers when he acts without subject matter jurisdiction [citation], decides an issue that was not submitted to arbitration [citations], arbitrarily remakes the contract [citation], upholds an illegal contract [citation], issues an award that violates a well-defined public policy [citation], issues an award that violates a statutory right [citation], fashions a remedy that is not rationally related to the contract [citation], or selects a remedy not authorized by law [citations]. In other words, an arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law." (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122].) In reviewing an arbitration award, a court "must give substantial deference to the arbitrator's own assessment of his contractual authority." (*Id.* at pp. 443–444; see *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 372 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*) [courts must be properly deferential to an arbitrator's choice of remedies].)

The majority faults the *Hall Street* court for failing to consider "whether the FAA provision for vacatur 'where the arbitrators exceeded their powers' (9 U.S.C. § 10(a)(4)) is applicable when the agreement specifically limits the arbitrators' powers by providing for an award governed by law and reviewable for legal error." (Maj. opn., *ante,* at p. 1358.) Yet the majority does not itself analyze whether this excess of powers clause provides textual support for full judicial review of legal error. Had it done so, it would have run up against the *noscitur a sociis* rule of construction, a close cousin of the *ejusdem generis* rule invoked by the *Hall Street* court. *Noscitur a sociis* (it is

known by its associates) is the principle that "a word takes meaning from the company it keeps." (*People v. Drennan* (2000) 84 Cal.App.4th 1349, 1355 [101 Cal.Rptr.2d 584].) " 'In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would . . . make the item markedly dissimilar to the other items in the list.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042].)

In the case of section 1286.2, the enumerated grounds for vacating an arbitration award involve either some type of misconduct by the arbitrator, or some type of arbitrary action by the arbitrator that deprives a party of basic procedural fairness, such as the failure to postpone a hearing on sufficient cause, denial of the right to put on material evidence, or the failure to make statutorily required disclosures regarding conflicts of interest. The types of conduct falling within the excess of powers clause, as interpreted by case law discussed above, fit the mold of section 1286.2, inasmuch as this statute is primarily designed to guard against arbitrary extension of the arbitrator's jurisdiction to decide questions or fashion remedies beyond the scope of the arbitration agreement. Judicial review of these types of objectionable conduct keeps courts at a distance from the merits of the controversy, and confines judicial scrutiny instead to basic questions of procedural fairness and jurisdictional propriety, while giving considerable although not unlimited deference to the arbitrator's judgment calls. (See *Advanced Micro Devices, supra*, 9 Cal.4th at p. 372; *Oakland-Alameda County Coliseum Authority v. CC Partners* (2002) 101 Cal.App.4th 635, 641–642 [124 Cal.Rptr.2d 363].) It is arguably the case that an arbitrator's refusal to follow well-settled legal principles arising from a body of law that the parties have agreed to follow, when the parties have explicitly constrained the arbitrator to follow that body of law, is that kind of arbitrary behavior that belongs within the scope of section 1286.2. As discussed below, the legislative history of that section supports this interpretation.

But it is difficult to imagine that the Legislature intended to apply this excess of powers provision to a situation in which an arbitrator reasonably answers an unsettled question of law, which answer is not clearly wrong at the time the arbitrator made his or her award. It seems barely conceivable, especially in light of the surrounding provisions of section 1286.2 involving arbitral misconduct, or arbitrary action, that the Legislature intended the phrase "arbitrators exceeded their powers" to include a situation in which neither has occurred, and in which the arbitrator has merely given to a question of law an answer with which a reviewing court may disagree.

The majority quotes from the California Law Revision Commission (Commission) study that preceded the adoption of the CAA in support of its

expansive interpretation of the excess of powers clause. As the study stated: "Arbitrators may base their decision on broad principles of justice and equity, but if the submission agreement specifically requires an arbitrator to act in conformity with rules of law, the arbitrator exceeds his authority if his decision is not based on rules of law." (Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-56, fns. omitted (Arbitration Study).) Yet all that this sentence suggests is that the Commission, and inferentially the Legislature, contemplated that an arbitrator's blatantly departing from "rules of law" by which the parties had agreed to be bound, and instead following his or her own idea of justice and equity, constitutes an excess of powers and grounds for vacatur. The above does not suggest that the parties could opt for full-blown judicial review of an arbitrator's reasonable determination of unsettled legal questions based on that agreed-upon body of law. Such an arbitral decision would still be "based on rules of law."

The majority's reliance on other portions of legislative history is similarly unavailing. The majority quotes the rule in *Crofoot v. Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 186 [260 P.2d 156] (*Crofoot*), which, after discussing case law pertaining to judicial review of legal error in arbitration awards under the 1927 predecessor to the CAA, stated: "Under these cases it must be held that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." The majority cites to a portion of the Arbitration Study quoting this principle with approval as evidence that the Commission and the Legislature intended to incorporate this rule in the 1961 CAA.

Assuming this to be so, the *Crofoot* rule must be placed in context. As the court stated in the discussion leading up to its formulation of the rule: "Under the 1927 statute, *it is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention.* [Citation.] It has been held that the arbitrator need not make findings or give reasons for his conclusions. (*Sapp* v. *Barenfeld* [(1949)] 34 Cal.2d 515 [212 P.2d 233].) Certainly it is settled that the courts have no power to review the sufficiency of the evidence. [Citations.] The law is not quite so clear as to a court's powers of review over questions of law. The earlier cases held that the court had the power to review errors of law, at least where they appeared upon the face of the award. (*In re Frick* [(1933)] 130 Cal.App. 290 [19 P.2d 836]; *Utah Const. Co.* v. *Western Pac. Ry. Co.* [(1916)] 174 Cal. 156 [162 P. 631].) The later cases have gone much farther in granting finality to the award even as to questions of law. In *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.* [(1946)] 29 Cal.2d 228, 233 [174 P.2d 441], it was bluntly held that 'The merits of the controversy between the parties are not subject to judicial review.' In *Sapp* v.

*Barenfeld*[, *supra*,] 34 Cal.2d 515, 523 . . . , the court held: 'Even though a party expressly asserts a lawful claim in the submission or raises it by the presentation of evidence to the arbitrators, the law does not guarantee that the claim will be allowed. Arbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' [Citations.] In *United States* v. *Moorman* [(1950)] 338 U.S. 457 [94 L.Ed. 256, 70 S.Ct. 288] the United States Supreme Court, in upholding as final the arbitrator's determination, held that, whether the problem raised was one of law or of fact, the courts should not fritter away the arbitrator's powers under the guise of interpretation." (*Crofoot, supra*, 119 Cal.App.2d at pp. 185–186, italics added, fn. omitted.)

Thus, the *Crofoot* rule, rather than being robust support for the majority's principle that an arbitration agreement may give rise to full judicial review of an arbitrator's legal determinations, is in context rather an undeveloped suggestion that parties have some limited capacity to qualify the strong rule against judicial review of legal error. The nature of that capacity is suggested by the court's quotation from *Sapp v. Barenfeld* that arbitrators do not even have to follow the law, but can follow instead broad principles of equity and justice, unless the arbitration agreement provides otherwise. *Crofoot* and, as discussed above, the Arbitration Study, suggest that the parties can, by agreement, bind the arbitrator to follow California law or some other established body of legal rules, and can vacate arbitration awards that clearly depart from such rules and revert to the arbitrator's notion of equitable principles, because in such departure the arbitrator exceeds his or her powers as defined by the parties to the agreement. Neither *Crofoot* nor the Arbitration Study suggests that an arbitration award by an arbitrator who reasonably follows agreed-upon legal principles can be vacated. And the Arbitration Study, like the passage from *Crofoot* cited above, reaffirms that "[e]very presumption favors an award by arbitrators." (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-53.)

The Arbitration Study cites several cases interpreting the 1927 statute in support of the proposition that the "[m]erits of an arbitration award either on questions of fact or of law may not be reviewed except as provided for in the statute in the absence of some limiting clause in the arbitration agreement." (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-53; see *id.*, fn. 142.) None of these cases comes close to supporting a broad mandate for parties to contract for full-scale judicial review. Of all the cases cited in the pertinent footnote, only *Flores v. Barman* (1955) 130 Cal.App.2d 282 [279 P.2d 81] reverses the arbitrator's legal determinations, concluding that the arbitrator had misconstrued the plain terms of a collective bargaining agreement by interpreting that agreement to remain in effect when it had in fact

terminated, and when the arbitration agreement expressly provided that the arbitrator was without authority to change the contract. (*Id.* at pp. 287–290.) This case is in harmony with the basic principles set forth in the pre-1961 decisions that while " 'every presumption is in favor of the [arbitration] award [citation] and mere unsound reasoning by an arbitrator in reaching a conclusion within the scope of proper arbitration will not invalidate the result [citation] . . .' " (*Firestone Tire & Rubber Co. v. United Rubber Workers* (1959) 168 Cal.App.2d 444, 449 [335 P.2d 990]), arbitrators exceed their powers when they ignore "clear and unambiguous" contractual language (*id.* at pp. 448–449; see also *Drake v. Stein* (1953) 116 Cal.App.2d 779, 785 [254 P.2d 613]). These principles are a far cry from the majority's holding that parties may structure their arbitration agreements in such a way as to require courts to review de novo an arbitrator's legal determinations, without any deference to the arbitrator, even when the arbitrator reasonably addresses novel legal questions.[2]

Arbitration was intended to be a relatively quick and inexpensive means of resolving disputes, in part by making the arbitrator's resolution binding and final. (*Moncharsh, supra*, 3 Cal.4th at p. 9.) Although it is arguably the case that the court went too far in emphasizing arbitral finality at the expense of obtaining a just and reasonable result (see *Moncharsh, supra*, 3 Cal.4th at p. 33 (conc. & dis. opn. of Kennard, J.)), the majority goes too far in the opposite direction. The majority decision would allow parties to fundamentally refashion arbitration from being a means of binding dispute resolution to being essentially a preliminary factfinding procedure, with trial and appellate courts required to settle decisive legal questions. The majority believes this change to be for the good. (Maj. opn., *ante*, at pp. 1362–1364.) Whether or not this is so is open to question. Arguably this rule will burden the courts with the minutiae of arbitration disputes, thereby negating whatever benefits

---

[2] The Arbitration Study also cites *Utah Const. Co. v. Western Pac. Ry. Co.* (1916) 174 Cal. 156 [162 P. 631] (*Utah Construction*) for the proposition that "Arbitrators may base their decision on broad principles of justice and equity, but if the submission agreement specifically requires an arbitrator to act in conformity with rules of law, the arbitrator exceeds his authority if his decision is not based on rules of law." (Arbitration Study, *supra*, 3 Cal. Law Revision Com. Rep. at p. G-56, fns. omitted; see *id.*, fn. 168.) *Utah Construction*, which predated the modernization of arbitration with the 1927 statute, contemplates a more expansive notion of judicial review that most post-1927 cases have rejected. (See *Moncharsh, supra*, 3 Cal.4th at pp. 19–23.) In any case, even *Utah Construction* did not decide if the error of law in the case before it was grounds for vacating the arbitration award, merely assuming that it would be and then finding no error. (*Utah Construction, supra*, 174 Cal. at p. 163.) In the 90-plus years since this case was decided, my research could find no court that has embraced *Utah Construction*'s dictum and overturned an arbitration award after undertaking full-scale de novo judicial review, even when the error was not clear from the face of the award. There is no indication the Commission or the Legislature intended to incorporate this expansive reading of *Utah Construction* or to extend it to include situations in which arbitrators reasonably decide unsettled questions of law.

arbitration may have had in conserving judicial resources. Nor is it clear that this refashioning will stop at reviewing for legal error—will parties be able to bind courts to review mixed questions of law and fact, or to review whether the arbitration award is based on substantial evidence? But one thing seems certain: the majority holding recreates arbitration in a way the Legislature could not have envisioned. Because arbitration in this state has long ago ceased to be governed by common law and is now wholly a creature of statute (see *Moncharsh, supra,* 3 Cal.4th at pp. 17–20), it is for the Legislature, not this court, to inaugurate such a fundamental change in the nature of arbitration.

It is understandable that parties resorting to arbitration would not wish to entirely relinquish judicial review and would seek protection from wholly arbitrary arbitrators. As discussed, the CAA permits parties to clearly define the limits to an arbitrator's powers, and in so doing to obtain some measure of judicial review. Certainly such agreements would require courts to vacate clear errors appearing on the face of an arbitration award that cause substantial prejudice. (Cf. *Moncharsh, supra,* 3 Cal.4th at p. 33 (conc. & dis. opn. of Kennard, J.).) Moreover, nothing prevents parties from contracting to engage in nonbinding factfinding/dispute resolution proceedings outside the scope of the CAA designed to facilitate settlement of litigation. Nor are parties prevented from agreeing to have arbitration awards reviewed by appellate arbitration panels. But it seems quite clear the statute does not permit review of ordinary legal error, when an arbitrator has acted reasonably in addressing the legal questions before him or her. The object of an agreement requiring de novo judicial review is not to constrain the unreasonable exercise of the arbitrator's power, as is permitted by statute, but to conscript courts to serve as appellate arbitration tribunals, with all the attendant costs and burdens. The parties are without power under the statute to do so.[3]

## II.

Turning to the present case, in reviewing the present award, "every intendment of validity must be given the award and . . . the burden is upon the one claiming error to support his contention." (*Crofoot, supra,* 119 Cal.App.2d at p. 185.) Here, DIRECTV fails to carry its burden. A majority of the arbitrators below came to essentially two conclusions. First, that the arbitration agreement was silent on whether classwide arbitration was permitted. Second, that under California law, an arbitration agreement silent on classwide arbitration permits such arbitration. As to the first question, given

---

[3] I note that this is not a case in which more rigorous judicial review is necessary to enable a party to vindicate an unwaivable statutory right. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 106–107 [99 Cal.Rptr.2d 745, 6 P.3d 669].)

the lack of a specific provision concerning classwide arbitration, the arbitrators' conclusion is reasonable.

The second question of whether an arbitration agreement silent on classwide arbitration permits such arbitration has not been squarely addressed by this court or other appellate courts of this state. To be sure, classwide arbitration is available when to deny it would be unconscionable (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 163 [30 Cal.Rptr.3d 76, 113 P.3d 1100]) or contrary to public policy (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 463 [64 Cal.Rptr.3d 773, 165 P.3d 556]; see also *Keating v. Superior Court* (1982) 31 Cal.3d 584, 613 [183 Cal.Rptr. 360, 645 P.2d 1192] [classwide arbitration must be granted when to deny it in the context of an arbitration contract of adhesion would result in "gross unfairness"]). The parties here have not claimed unconscionability or violation of public policy. Even so, without deciding questions not before us, the rule that a contract silent on classwide arbitration will be interpreted to allow such arbitration is not contrary to any settled law or legal principle in the state, nor to any settled rule of the FAA. In fact, California contract law is replete with interpretive presumptions grounded in public policy that permit certain contractual outcomes only when they are clearly expressed. (See, e.g., *Crawford v. Weather Shield Mfg. Inc.* (2008) 44 Cal.4th 541, 552–553 [79 Cal.Rptr.3d 721, 187 P.3d 424] [noninsurance indemnity agreements construed strictly against party seeking to be indemnified against its own negligence]; *MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 [3 Cal.Rptr.3d 228, 73 P.3d 1205] [exclusionary clauses in insurance contracts interpreted narrowly against the insurer]; *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1538 [246 Cal.Rptr. 823] [contractual clauses in nonadhesion contract that seek to limit liability will be strictly construed].) Indeed, in the present case the majority opinion proposes a rule that an agreement regarding expanded judicial review of arbitration awards must be clear on its face. (See maj. opn., *ante*, at p. 1360.) Whether there should be a rule that, even when it would not be unconscionable to prohibit class arbitration, such arbitration would be prohibited only if the prohibition is clearly expressed is an unresolved question, and the arbitral majority's answer in the affirmative is reasonable.

The majority does not conclude otherwise. It does not hold that the arbitrators' judgment that classwide arbitration is potentially available under this agreement is incorrect.[4] Rather, it finds fault with some of the arbitrators' reasoning regarding their reading of the American Arbitration Association rules and with their interpretation of case law. Yet "[i]t is well settled that

---

[4] Of course, the arbitrators decided only that classwide arbitration is potentially available under the agreement, and have not yet decided whether such arbitration is appropriate in the present case.

'arbitrators do not exceed their powers merely because they assign an erroneous reason for their decision.' " (*Moncharsh, supra*, 3 Cal.4th at p. 28.) Moreover, even if full-blown judicial review were available, akin to appellate review of trial court decisions, "[t]here is perhaps no rule of review more firmly established than the principle that a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion." (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070].) That rule must apply with equal or greater force to judicial review, to the extent it is available, of arbitration awards. Whether or not the arbitrators' decision contained faulty legal reasoning, the conclusion that the agreement is silent on class arbitration and that a silent agreement will permit such arbitration if otherwise appropriate is not clearly erroneous under California law or the FAA. I would therefore affirm the judgment of the Court of Appeal directing the trial court to confirm the arbitration award.

George, C. J., concurred.