[No. C063268. Third Dist. Mar. 1, 2011.]

THOMAS BOLLAY et al., Plaintiffs and Appellants, v.
OFFICE OF ADMINISTRATIVE LAW, Defendant and Respondent;
STATE LANDS COMMISSION, Real Party in Interest and Respondent.

COUNSEL

Wendel, Rosen, Black & Dean, Bruce S. Flushman and Wendy L. Manley for Plaintiffs and Appellants.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, John A. Saurenman, Assistant Attorney General, Christiana Tiedemann and Alice Busching Reynolds, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

## Opinion

**NICHOLSON, Acting P. J.**—The property line between publicly owned tidelands and contiguous upland property is known as the mean high tide line. That line is not constant; it changes over time with the level of the sea and the erosion or buildup of the shore.

This case is a challenge to a policy of the State Lands Commission (Lands Commission) prohibiting development seaward of the most landward historical position of the mean high tide line. The challenge is limited to the argument that the Lands Commission's policy is a regulation and, therefore, is not valid because it is an underground regulation—that is, it was not promulgated pursuant to the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). While the Lands Commission effectively concedes that the policy is a regulation, it claims, and the Office of Administrative Law and trial court both held, that the policy is exempt from promulgation under the APA because it is "the only legally tenable interpretation of a provision of law." (Gov. Code, § 11340.9, subd. (f).) The Lands Commission argues that its policy is required because of its legal duty to protect the state's tidelands.

Contrary to the holdings of the Office of Administrative Law and trial court, we conclude that the Lands Commission's policy is an invalid underground regulation because it was not promulgated as a regulation pursuant to the APA. The policy is potentially both overinclusive, prohibiting development on land that does not now and may never in the future belong to the state, and underinclusive, failing to prohibit development on land that may become state land in the future. Therefore, the policy is not the only legally tenable interpretation of law because it departs from and embellishes upon constitutional, statutory, and decisional law.

### ADMINISTRATIVE PROCEDURE ACT

██ Unless it is subject to one of the enumerated exceptions, every regulation must be adopted consistent with the procedural requirements of the APA. (Gov. Code, § 11340 et seq.) This requires, among other things, public notice and an opportunity for public comment before the regulation takes effect. (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333 [42 Cal.Rptr.3d 47, 132 P.3d 249] (*Morning Star*).) A regulation that is adopted inconsistently with the APA is an "underground regulation" (Cal. Code

Regs., tit. 1, § 250) and may be declared invalid by a court (*Morning Star, supra*, at p. 333; Gov. Code, § 11350). Such a declaration is what the Bollays seek in this action.

 The APA defines a "regulation" as a rule or standard of general application. (Gov. Code, § 11342.600.) The state agency rule or standard is a regulation subject to the APA if (1) it applies generally rather than to a specific case and (2) it implements, interprets, or makes specific the law enforced or administered by the state agency imposing the rule or standard.

 Several exceptions exempt regulations from the requirements of the APA. These exceptions allow the state agency to enforce or impose the rule or standard without promulgating it pursuant to the APA, even though the rule or standard fits the definition of a "regulation." The only exception relevant to this case is for a regulation that is "the only legally tenable interpretation of a provision of law." (Gov. Code, § 11340.9, subd. (f).)

Under the "only legally tenable interpretation" exception, the state agency need not promulgate it pursuant to the APA if the regulation essentially reiterates the law. If the regulation departs from or embellishes upon the law, the state agency must comply with the APA. (*Morning Star, supra*, 38 Cal.4th at p. 336.)

 If an interested person believes that a state agency has adopted an underground regulation, that person may file a petition with the Office of Administrative Law for a determination of whether the state agency complied with applicable provisions of the APA. (Cal. Code Regs., tit. 1, § 260(a).)

### MEAN HIGH TIDE LINE

The regulation at issue in this case is the Lands Commission's policy concerning development seaward of the most landward historical position of the mean high tide line. Therefore, we turn to the legal definition of "mean high tide line."

 Pursuant to the California Constitution, statutes, and decisional law, the state owns all tidelands along the California coast in trust for the public. (Cal. Const., art. X, § 3; *State of Cal. ex rel. State Lands Com. v. Superior Court* (1995) 11 Cal.4th 50, 63 [44 Cal.Rptr.2d 399, 900 P.2d 648].) Those tidelands extend from the low-water mark to the ordinary high-water mark. (Civ. Code, § 670; *Lechuza Villas West v. California Coastal Com.* (1997) 60 Cal.App.4th 218, 235 [70 Cal.Rptr.2d 399] (*Lechuza Villas West*).) Therefore, the seaward boundary of land bordering coastal tidelands is the ordinary

high-water mark, also referred to as the mean high tide line. (Civ. Code, § 830; *Lechuza Villas West, supra*, at p. 235.)

The mean high tide line is "the line of high water as determined by the course of the tides." (*Borax Consol., Ltd. v. Los Angeles* (1935) 296 U.S. 10, 22 [80 L.Ed. 9, 17, 56 S.Ct. 23].) Two variables affect the location of the mean high tide line. Those variables are (1) the height of the mean high tide and (2) the erosion or buildup of the shore. (*Lechuza Villas West, supra*, 60 Cal.App.4th at p. 235.)

The mean high tide is determined by averaging the height of the high tides over roughly 19 years. (*Borax Consol., Ltd. v. Los Angeles, supra*, 296 U.S. at pp. 26–27.) In conjunction with the mean high tide, the natural erosion or buildup of the shore affects the location of the mean high tide line on the shore, especially on a sandy beach. (*Lechuza Villas West, supra*, 60 Cal.App.4th at p. 235.)

As the mean high tide rises or the shore erodes, the mean high tide line moves landward. As the mean high tide falls or the shore builds up, the mean high tide line moves seaward. Therefore, the mean high tide line may change over time, affecting the seaward boundary of property along the coast.

■ The Lands Commission is charged with protecting the public's interest in state tidelands. It has exclusive jurisdiction over ungranted tidelands. (Pub. Resources Code, §§ 6002, 6301.)

## BACKGROUND FACTS

The following facts were established by evidence in the administrative proceedings challenging the Lands Commission's failure to promulgate the policy as a regulation. These facts are not essential to the legal determination of whether the policy is an underground regulation. However, they serve as an illustration of one application of the policy.

Thomas and Nancy Bollay own a sandy beach parcel on Santa Claus Lane in Carpinteria. The parcel extends landward from the mean high tide line to rocks protecting a railroad right-of-way on the landward side of the parcel. The beach is used heavily by the public.

In 1999, the Bollays applied to the County of Santa Barbara (County) for a permit to build a residence on the parcel. The County requested information from the Lands Commission concerning whether the proposed construction would encroach on state tidelands under the control of the Lands Commission.

In response to the County's request, the Lands Commission objected to the proposed construction because it was possible that the construction would encroach on state tidelands. It based this objection on a review of "the information provided and an analysis of our in-house records and maps."

Still pursuing the building permit in 2003, the Bollays submitted to the Lands Commission a survey prepared by a licensed land surveyor showing the mean high tide line was seaward of the proposed construction site. The Lands Commission rejected the survey, stating that the mean high tide on the beach had changed substantially over the years. As evidence, the Lands Commission relied on surveys conducted in 1956 and 1964, showing that virtually the entire beach seaward of the railroad right-of-way had been seaward of the mean high tide line.

In 2004, the County began an investigation into exercising its eminent domain powers to acquire the Bollays' property and seven other beach lots along Santa Claus Lane for public purposes. The County contracted with the Lands Commission to determine the location of the mean high tide line on the beach. The Lands Commission responded with its Santa Claus Lane Mean High Tide Line Study Report. The report merely reflected the Lands Commission's in-house sources concerning the historical range of the mean high tide line. Referring to the 1964 survey, the report found that the historical range of the mean high tide line on the beach extends to the railroad right-of-way and that the line would continue to fluctuate within its full historical range. The Lands Commission did not attempt to determine the existing mean high tide line.

The report concluded that "it seems unlikely that any of [Santa Claus Lane beach] parcels could be developed in a manner that complied with Coastal Act policies or that conformed to the State Land[s] Commission's policy *that new development be sited landward of the most landward location of the mean high tide line.*" (Italics added.)

The italicized part of the report's conclusion is the policy challenged by the Bollays in this action.

## RELEVANT PROCEDURE

In 2008, almost a decade after filing their application to build a residence, the Bollays filed a petition with the Office of Administrative Law seeking a determination that the Lands Commission's policy is an invalid underground regulation. The Office of Administrative Law issued a determination stating that the policy is a regulation because it is a rule of general application that implements, interprets, or makes specific the Lands Commission's exclusive

jurisdiction over state tidelands. Having determined that the policy is a "regulation," however, the Office of Administrative Law held that it is not subject to laws requiring promulgation under the APA because the policy is the only legally tenable interpretation of the laws governing the Lands Commission's activities.

Explaining its holding that the policy is the only legally tenable interpretation of law, the Office of Administrative Law stated: "[W]hile the boundary line of state-owned tidelands lies seaward of the mean high tide line, *that boundary line may vary*, and the Commission's authority necessarily includes the protection of any foreseeable interest in state-owned tidelands resulting from changes in the boundary line." (Original italics.) The determination provided no legal support for the proposition that the authority of the Lands Commission includes "protection of any foreseeable interest" in property landward of the mean high tide line.

The Bollays filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) and complaint for declaratory relief, challenging the holding of the Office of Administrative Law. The petition and complaint name the Office of Administrative Law as the respondent and defendant and the Lands Commission as a real party in interest. The trial court denied the petition and entered judgment against the Bollays on the complaint. In doing so, the court considered only whether the Lands Commission's policy is the only legally tenable interpretation of the pertinent law. It did not consider whether the policy is a regulation pursuant to the definition in the APA.

Concerning whether the Lands Commission's policy is the only legally tenable interpretation of the law, the court stated that "the law on which the [Lands Commission's] policy is based can be read and applied only in the way it is applied in the policy to identify state-owned tidelands whose public trust purposes must be protected by the [Lands Commission] from private encroachment." The court reasoned: "The [Lands Commission], in framing the policy, has no discretion under the law of coastal tideland boundaries to consider less than the full range of [mean high tide line] locations in identifying the extent of state tidelands that require protection for public uses from encroachment by upland development." The court provided no legal support for this holding concerning the scope of the Lands Commission's discretion.

The Bollays appeal. On appeal, the Office of Administrative Law and Lands Commission, both represented by the Attorney General, filed a joint brief. We therefore refer to their arguments collectively as the Lands Commission's.

### DISCUSSION

Before considering the question of whether the Lands Commission's policy is exempt from promulgation under the APA because it is the only legally tenable interpretation of the pertinent law, we must discuss a footnote in the Lands Commission's brief on appeal stating that it "does not concede that the policy is a regulation."

The Lands Commission states in that footnote that its policy is not a regulation because the Lands Commission is not the relevant permitting agency (that would be the County) and therefore does not implement, interpret, or make specific the law. However, the Lands Commission did not make this argument in the trial court. We conclude that the argument is forfeited for two reasons: (1) it was not made in the trial court (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12 [82 Cal.Rptr.3d 229, 190 P.3d 586]) and (2) it is asserted perfunctorily on appeal in a footnote as an afterthought (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2 [34 Cal.Rptr.2d 558, 882 P.2d 249]).

In any event, we agree with the Office of Administrative Law that the policy is a regulation. The policy has general application and implements the Lands Commission's authority to protect state tidelands from trespass and encroachment. (*Morning Star, supra,* 38 Cal.4th at pp. 333–334.) Therefore, we turn to the question of whether the regulation is exempt from promulgation because it is the only legally tenable interpretation of the law.

The Lands Commission's argument that its policy is the only legally tenable interpretation of pertinent law is as follows: "[W]ell-established law instructs that the State owns tidelands up to the ordinary high water mark as measured by the mean high tide line. [Citations.] The California Constitution, the Public Resources Code and the common law public trust doctrine require that the State retain tidelands for public trust uses. [Citation.] The Commission's policy that new development be sited landward of the most landward location of the mean high tide line is a simple reiteration of these provisions of law."

This argument fails in its conclusion. The Lands Commission is correct that (1) the state owns the land seaward of the mean high tide land and (2) the state holds this land in trust for the public. However, the Lands Commission's policy does not protect the state's ownership of land only to the current mean high tide line but instead to the most landward historical mean high tide line. Thus, the area of land "protected" by the policy potentially overextends onto land that is not now and may never again be state property, though it once was.

Although the Lands Commission does not expressly acknowledge this potential overextension, it claims that the policy is not overly extensive because, in the case of the Bollays' property, the Lands Commission determined that the mean high tide line would continue to fluctuate within its full historical range. This argument fails because it uses an anecdote that does not necessarily reflect all cases. Even assuming the Lands Commission is correct that the mean high tide line on the Bollays' property will continue to fluctuate within its full historical range, there is neither argument nor evidence that, at all points on the California coast, the mean high tide line will continue to fluctuate within its full historical range. Recall that our review is of the determination that the policy is not an underground regulation, not of the Lands Commission's conduct with respect to the Bollays' property.

Because the area of land "protected" by the policy potentially overextends onto land that may never again be state property, the policy is not the only legally tenable interpretation of law, whether that law be constitutional, statutory, or decisional law. It does not simply reiterate the law; it departs from and embellishes upon that law. A policy stating that the Lands Commission will object to any development seaward of the current mean high tide line or the most recently identified mean high tide line would be at least equally tenable under the law. Simply put, the Lands Commission's policy is not the only legally tenable interpretation of law because it potentially "protects" the public's interest in land that does not now and may never in the future belong to the state.

That some other policy might allow development on land that, in some theoretical future, might become state land does not make the current policy the only legally tenable one because the Lands Commission has other tools to deal with such an eventuality. For example, if a person or structure is on state tidelands illegally, the Lands Commission may eject the trespasser, remove the structure, and collect damages. (Pub. Resources Code, §§ 6216.1, 6224.1, 6302.)

Furthermore, the current policy is potentially underinclusive as well because the mean high tide line could move further landward than it has ever been. Thus, a policy that "protects" only land that is seaward of the most landward historical mean high tide line does not preserve the public's interest in land that may foreseeably become state tidelands.

■ We therefore conclude that the Lands Commission's policy is not the only legally tenable interpretation of constitutional, statutory, and decisional law. That conclusion entitles the Bollays to the relief requested—that is, a judicial declaration that the policy is invalid because it was not promulgated pursuant to the requirements of the APA. Because this conclusion decides the

issue on appeal, we need not consider whether the Lands Commission may validly adopt a regulation reflecting the policy at issue here.

## DISPOSITION

The judgment is reversed and remanded with instructions to grant the Bollays' petition for writ of administrative mandamus and request for a declaration that the Lands Commission's policy is an invalid underground regulation. The Bollays are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Robie, J., and Butz, J., concurred.