Filed 5/20/15  Rossiter v. Lightbourne CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| ALEXIS ROSSITER, | C071629 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2010-80000527-CU-WM-GDS) |
| v. | |
| WILL LIGHTBOURNE, as Director, etc., et al., | |
| Defendants and Respondents. | |

By statute, benefit recipients in the CalWORKS[1] program, California's welfare-to-work program, are entitled to "supportive services" that are necessary to participate in the particular job training or educational program to which they are assigned.  (Welf. & Inst. Code, § 11323.2.) [2]  Supportive services include child care, transportation costs, and

----

[1] California Work Opportunity and Responsibility to Kids Program (CalWORKS), Welfare and Institutions Code section 11200 et seq., is California's assistance program for needy families and children.

[2] Further statutory references to sections of an undesignated code are to the Welfare and Institutions Code.

1

ancillary expenses. (§ 11323.2, subd. (a)(1)-(3).) Ancillary expenses are defined by statute to include "the cost of books, tools, clothing specifically required for the job, fees, and other necessary costs." (§ 11323.2, subd. (a)(3).)

The Legislature delegated the power to promulgate regulations to the State Department of Social Services (DSS). (§§ 10063, 10554, 11209.) DSS adopted a Manual of Policies and Procedures. (Cal. Health and Human Services Agency, State Dept. of Social Services, Manual of Policies and Procedures: Eligibility and Assistance Standards (1999) ch. 40-000 et seq. (DSS Manual).) The section dealing with supportive services states: "Tuition (and school fees in the nature of tuition) are not ancillary expenses. The county is not obligated to pay these costs when a person or entity, other than the county or county authorized entity, contracts for the training." (DSS Manual, § 42-750.113(a).)[3]

Plaintiff Alexis Rossiter, a CalWORKS recipient, asked the county to pay certain mandatory fees charged by California State University Sacramento (CSUS). When the county refused, Rossiter requested a hearing before an administrative law judge (ALJ). Following a hearing, the ALJ denied the claim, reasoning that fees that must be paid as a condition of obtaining instruction are fees in the nature of tuition as that term is used in the DSS regulation.

Rossiter appeals from a trial court judgment denying his petition for writ of mandate and writ of administrative mandamus. Rossiter's petition was filed against DSS and its director. Rossiter argues that DSS incorrectly interpreted its own regulation, and that the phrase "fees in the nature of tuition" means the equivalent of tuition, which is a fee for instruction. He argues that following this definition, CalWORKS must pay the mandatory fees charged by CSUS as ancillary expenses.

---

[3] Although CalWORKS is overseen by DSS, it is implemented locally by each county.

2

We shall conclude that "fees in the nature of tuition" are not the equivalent of "tuition" and that by specifying that both tuition and fees in the nature of tuition were not ancillary expenses, the regulation refers more broadly than strictly to fees for instruction. We conclude that the something more referred to are fees that are the core cost of attending the school, which DSS reasonably determined could be ascertained by asking whether the fee in question was required of all students as a condition of attending the school.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Alexis Rossiter receives CalWORKS benefits for himself and his children. Pursuant to the CalWORKS program, every nonexempt benefit recipient must participate in welfare-to-work activities as a condition of eligibility for benefits. (§ 11320.3, subd. (a).) These activities include such things as on-the-job training, job skills training, and other education directly related to employment. (§ 11322.6.) Counties implement the CalWORKS program at the local level. (§ 10531.)

Pursuant to the DSS Manual section 42-711.52, recipients of benefits are required to participate in an appraisal, which determines the appropriate activities for each participant. Rossiter is participating in a self-initiated program (SIP) by which a recipient may continue to obtain an undergraduate degree if he or she was enrolled in school before being appraised for welfare-to-work activities. (DSS Manual, § 42-711.541.)

All participants are entitled to "[n]ecessary supportive services" which include child care, transportation costs, personal counseling if needed, and "ancillary expenses." (§ 11323.2.) The Legislature invested DSS with the authority to promulgate regulations, and DSS has adopted a regulation defining "[a]ncillary expenses" as "the cost of books, tools, clothing specifically required for the job, fees, and other necessary costs." (DSS Manual, § 42-750.113; §§ 11209, 11299.) DSS has specifically *excluded* from the definition of ancillary expenses, tuition and "school fees in the nature of tuition" where the participant is in an SIP, although such fees are paid if the county itself contracts for

3

the participant to attend school. (DSS Manual, § 42-750.113(a) ["The county is not obligated to pay these costs when a person or entity, other than the county or county authorized entity, contracts for the training."].)

Rossiter was participating in an SIP and enrolled in CSUS for the fall 2009 semester. On July 20, 2009, Rossiter faxed an invoice to his case worker, which stated: "Please find my attached class schedule and tuition bill for . . . CSUS." The attached "tuition bill" contained the following entries:

| | |
|---|---|
| ASI Fee | $155.50 |
| Facilities Fee | $3.00 |
| Health Services Fee | $73.00 |
| IRA Fee | $8.00 |
| Newspaper Fee | $2.50 |
| State University Fee UG | $1,677.00 |
| University Union Fee | $195.00 |

When Rossiter did not hear from his case worker, he sent another fax to his new case worker regarding his "CSUS Tuition" that stated, "Please find the attached invoice for this next semesters tuition." Attached was an invoice with identical charges to the invoice previously sent.

The new case worker informed Rossiter that she would process his requests for books and transportation expenses, but that tuition was not a covered ancillary expense, and the request for tuition would be rejected. Rossiter requested a hearing, arguing that pursuant to section 11323.2, subdivision (a), he was entitled to supportive services, which included necessary costs, and that tuition was a necessary cost for school.

4

Rossiter's position at the administrative hearing changed.  There he argued that all but two of the fees were not for instruction, and therefore not tuition or fees in the nature of tuition, leaving $525.25 that were reimbursable.  He stated that the associated students' fee was for noninstructional activities, the university union fee and facilities fee were for bonds for buildings on the campus, the health services fee was for services provided by the student health center, and the newspaper fee was for distribution of the student newspaper.[4]  This argument effectively conceded that two of the fees -- the state university fee and the IRA fee -- were in the nature of tuition and not reimbursable.

The ALJ denied Rossiter's claim on the ground the fees were in the nature of tuition because they were fees that must be paid as a condition of obtaining instruction from CSUS.

Rossiter filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) to set aside the administrative hearing decision, and for writ of mandamus

---

[4] CSUS provided the following explanation of registration fees, all of which are mandatory:  (1) state university fee -- "Fee established to augment the budget for Instructional Services"; (2) instructionally related activities fee -- "These funds are to provide support for essential educational experiences and activities that aid and supplement the fundamental educational mission of the University.  For example, laboratory experiences which are at least partially sponsored by an academic discipline or department and which are, in the judgment of the President, integrally related to its formal instructional offerings.  Activities which are considered to be essential to the quality of an educational program and an important instructional experience for any student enrolled in the respective program may be considered instructionally related"; (3) associated students fee -- "To provide for non-instructional activities and programs which are designed to benefit all students and to maintain the student's well-being"; (4) university union fee -- "To provide payment for the bond on the University Union building"; (5) facilities fee -- "To provide payment for the bond on the Student Health Center"; (6) health services fee -- "To provide basic health services to students at the Health Center.  Basic care is the treatment of common illnesses or injuries"; (7) Hornet Newspaper fee -- "To provide free copies of student newspaper to students."

5

(Code Civ. Proc., § 1085) ordering DSS to comply with its mandatory duty to pay the fees.

The trial court denied the writ. It reasoned that DSS's interpretation of "fees in the nature of tuition" as fees that all students must pay as a precondition for attendance was a logical, reasonable interpretation in harmony with the regulation.

DISCUSSION

I

Deference to DSS Interpretation

The trial court determined that DSS's interpretation of DSS Manual section 42-750.113(a) was "not entitled to any significant level of deference" because the interpretation was relatively recent, represented a change in approach by DSS, concerned the meaning of common, nontechnical terms, did not concern complex or obscure matters as to which administrative experience and expertise would weigh heavily, was not issued after consideration by the most senior level of agency officials, and was not the product of formal rule making.[5] Rossiter argues the trial court was correct. DSS argues its interpretation of its own regulations is entitled to " 'great weight . . . .' "

It is not strictly necessary for us to address the proper deference to DSS's interpretation, because we shall conclude that DSS's interpretation is correct whether or not we give deference to it. We nevertheless set forth the proper standard applicable to our review.

There are "two broad categories of factors relevant to a court's assessment of the weight due an agency's interpretation: Those 'indicating that the agency has a comparative interpretive advantage over the courts,' and those 'indicating that the interpretation in question is probably correct.' (Cal. Law Revision Com., Tent.

_____

[5] The ruling actually refers to DSS Manual section 42-750.133. We assume this is a typographical error since there is no such section.

6

Recommendation, Judicial Review of Agency Action (Aug. 1995) p. 11 (Tentative Recommendation); see also Asimow, *The Scope of Judicial Review of Decisions of California Administrative Agencies* (1995) 42 UCLA L.Rev. 1157, 1192-1209.) [¶] In the first category are factors that 'assume the agency has expertise and technical knowledge, especially where the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion. A court is more likely to defer to an agency's interpretation of its own regulation than to its interpretation of a statute, since the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' (Tentative Recommendation, *supra*, at p. 11.)" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12 (*Yamaha*).)

This is a case of an agency interpreting its own regulation. The Legislature delegated the power to make rules and regulations regarding CalWORKS to DSS. (§§ 11200, 11209, 11229.) We therefore assume that the agency has more expertise, not because the issue is particularly technical, but because " 'the agency is likely to be intimately familiar with regulations it authored and sensitive to the practical implications of one interpretation over another.' " (*Yamaha, supra*, 19 Cal.4th at p. 12.)

"The second group of factors . . . --those suggesting the agency's interpretation is likely to be correct--includes indications of careful consideration by senior agency officials ('an interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than [one] contained in an advice letter prepared by a single staff member' (Tentative Recommendation, *supra*, at p. 11)), evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' (*ibid.*) ('[a] vacillating position . . . is entitled to no deference" (*ibid.*)), and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted." (*Yamaha, supra*, 19 Cal.4th at pp. 12-13.)

In this case the particular DSS interpretation of which Rossiter complains was contained in the ALJ's decision. It was only at the administrative hearing that Rossiter argued the fees at issue were not in the nature of tuition because they were not fees for instruction. His claim at the county level, and the claim the county rejected, was that tuition payments should be considered ancillary services.

Evidence was presented at the administrative law hearing that one other county had sought an interpretation from DSS as to the meaning of "fees in the nature of tuition." In that case, DSS responded that fees that are charged to all students and are required to be paid in order to attend school, are fees in the nature of tuition. While there was no evidence the interpretation had been carefully considered by senior agency officials (see *Yamaha*, *supra*, 19 Cal.4th at p. 13), it also was not an advice letter prepared by a single staff member. (*Ibid*.) The employment bureau chief for CalWORKS explained in his declaration that when a request for an interpretation comes from a county, there is a formalized process by which the county consultant follows up with the county to obtain the pertinent facts, the county consultant and analyst research the issue and put together a policy interpretation, which is then sent to the employment bureau chief for approval before being sent to the county.

There is no evidence DSS has vacillated in its interpretation of "fees in the nature of tuition" despite the trial court's conclusion that DSS previously permitted individual counties to set their own policies regarding which charges should be covered. The trial court based this statement on a formal request from Monterey County to define "tuition." Specifically, the question was whether an hourly fee charged by an instructor for a bus driver's licensing course should be paid by CalWORKS when the county did not contract for the course. DSS answered that the DSS Manual contained no concrete definition of tuition, thus the county had the flexibility to define it. DSS also stated that if the participant wanted the county to pay for the cost of the course, he should have received prior approval from the county. However, none of this is pertinent to the question of how

8

DSS interprets the term "fees in the nature of tuition." For that reason, there is no evidence DSS has vacillated in its position. No evidence was presented as to when DSS began interpreting the phrase "fees in the nature of tuition" in relation to when the regulation was promulgated.

Thus, of the two factors set forth in *Yamaha, supra*, 19 Cal.4th 1, one weighs in favor of deference to the DSS interpretation, and one weighs in no particular favor either way.

Rossiter also argues DSS's interpretation of its regulation is not entitled to deference because it is an underground regulation. He does not, however, argue that the interpretation was invalid as an underground regulation. An underground regulation is a regulation that is not adopted pursuant to the Administrative Procedures Act (APA). (*Bollay v. Office of Administrative Law* (2011) 193 Cal.App.4th 103, 106.) The APA provides that a state agency may not "issue, utilize, enforce, or attempt to enforce any guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule, which is a regulation as defined in [Government Code] Section 11342.600, unless the guideline, criterion, bulletin, manual, instruction, order, standard of general application, or other rule has been adopted as a regulation and filed with the Secretary of State pursuant to this chapter." (Gov. Code, § 11340.5, subd. (a).)

It is unclear whether an agency's interpretation of its own regulation may constitute an underground regulation subject to the procedural requirements of the APA. Government Code section 11342.600 defines a regulation as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific *the law enforced or administered by it*, or to govern its procedure." (Italics added.) An agency's interpretation of its own regulation is not strictly an interpretation of "the law enforced or administered by it." No case we have found directly addresses the issue. Some cases involve an agency or department's

9

interpretation of regulations adopted by another agency, commission, or department, but none involve an agency's interpretation of its own regulation. (See, e.g., *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 (*Tidewater*); *Clovis Unified School Dist. v. Chiang* (2010) 188 Cal.App.4th 794.)

Because of the way in which Rossiter has framed the argument, we need not determine whether the DSS interpretation is a regulation that should have been adopted pursuant to the APA. Instead, we need only determine whether DSS's interpretation of its regulation deserves deference from the courts. "The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts. [Citations.]" (*Carmona v. Division of Industrial Safety* (1975) 13 Cal. 3d 303, 310.)

Thus, we are left with DSS's interpretation of its own regulation, which is entitled to some deference, but recognize that the interpretation of a regulation is a question of law to be decided by the courts. (*State Farm Mut. Auto. Ins. Co. v. Quackenbush* (1999) 77 Cal. App. 4th 65, 71.) We accord some deference to DSS's interpretation because we find it to be a legally informed, commonsense assessment in the context presented. (*Ibid*.)

## II
## Fees in the Nature of Tuition

Rossiter's argument is that tuition is defined as payment for instruction, and that only fees that are for the purpose of instruction are fees in the nature of tuition. We find his citations to out-of-state authority and one California Attorney General opinion for the proposition that tuition is defined as a payment for instruction unhelpful for three reasons. First, they are not authority that is binding on this court. (*People v. Mays* (2009) 174 Cal.App.4th 156, 167; *City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 773.)

This is especially true when dealing with the interpretation of a regulation promulgated by a California administrative agency.

Second, any comparison is unwarranted because the circumstances in the cases cited are dissimilar from the circumstances of this case, precluding application of those holdings to these circumstances.[6] Third, the cases and Attorney General's opinion are concerned with the definition of "tuition." This case concerns the definition of "fees in the nature of tuition." The two are necessarily not the same, or there would be no need to note them separately in the regulation.

In determining the appropriate interpretation of the regulation under the particular circumstances presented here, we look first to the overall structure of assistance provided by CalWORKS. All CalWORKS participants are entitled to "supportive services," which includes child care, transportation costs, and "[a]ncillary expenses, which shall include the cost of books, tools, clothing specifically required for the job, fees, and other necessary costs." (§ 11323.2.) As indicated, where the county contracts for a particular welfare-to-work activity, the cost of participating in the activity itself is also paid by CalWORKS. (DSS Manual, § 42-750.113(a).) However, although an SIP participant is entitled to "supportive services," including "ancillary expenses," such "ancillary

---

[6] *Rheam v. Board of Regents of the University of Oklahoma* (Okla. 1933) 18 P.2d 535, 538, determined a fee imposed by the university to pay for costs of the student union building was not in violation of a state statute prohibiting charging state residents tuition. *State ex. Rel. Priest v. Regents of the University of Wisconsin* (Wis. 1882) 11 N.W. 472, determined a fee imposed to pay to heat and light public buildings and for janitorial services was not in violation of a state statute prohibiting charging state residents tuition. *Bianco v. Bianco* (N.Y. App. Div. 2007) 830 N.Y.S. 2d 21, 23, interpreted a divorce settlement by which the husband was obligated to pay private school tuition as not requiring husband to pay for room and board. The California Attorney General opinion (53 Ops.Cal.Atty. Gen. 182 (1970)) concluded that a materials and services fee might exceed the maximum tuition fee if a substantial portion of the fee was used to meet instructional expenses.

11

expenses" do not include tuition or school fees in the nature of tuition. (DSS Manual, § 42-750.113 (a).)

Tuition and fees in the nature of tuition are thus by definition not ancillary, meaning they constitute the core or main part of the cost of the education or training. DSS's definition of fees in the nature of tuition best reflects this understanding. Fees in the nature of tuition are those fees which reflect the core cost of attending the school, which fees are required of every student in order to attend the school.

Rossiter's definition of fees in the nature of tuition is too narrow. He argues that a fee in the nature of tuition is limited to a fee paid for instruction. This is not a fee in the nature of tuition--it *is* tuition. The fact that fees in the nature of tuition are separately listed in the regulation means they are not by definition tuition.

Rossiter's definition is also overly narrow because the tuition a student pays to a college or university does not just pay the instructor's salary. The cost of the buildings, classrooms, desks, chairs, supplies, administrative staff, maintenance, and utilities is included as tuition. Education Code section 94010 authorizes Stanford University to charge "such fees for tuition, as are necessary for the administration of the affairs of the university." This reflects a legislative understanding that a fee for tuition encompasses more than merely the cost of instruction. We can envision a county demanding a line item accounting of every aspect of a student's tuition bill in order to determine what items are not strictly related to instruction, and therefore must be paid by CalWORKS.

The reasons that a school may call a mandatory charge a fee rather than tuition likely include political and public relations concerns. However, from the standpoint of the student and the CalWORKS scheme, any amount that must be paid for the privilege of attending the school and receiving an education is the core cost of attending the school, and is not an ancillary cost that CalWORKS is designed to reimburse, unless the county has directly contracted for the recipient's education.

12

We disagree with Rossiter's argument that the trial court's interpretation of the regulation is contrary to the purpose of the CalWORKS program.  It is true that the goal of CalWORKS is to promote job preparation leading to self-sufficiency.  (§ 11322.7, subd. (a).)  But the resources for CalWORKS are not unlimited, and the statutory and regulatory scheme indicates that while CalWORKS funds are allocated to pay the cost of education or training when the county contracts for such,  SIP participants are eligible to receive only supportive services in connection with their education, and not the cost of the education itself.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.

     BLEASE     , Acting P. J.

We concur:

     MURRAY     , J.

     DUARTE     , J.